## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| BIJAN MODARESSI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MOLOOK VEDADI; ) | |
| MORTEZA MODARESSI, ) | |
| Also known as MORY MODARESSI; ) | |
| MOJO PROJECTS, LLC, ) | Court No. 05 Civ. 2424 (JDB) |
| Operating as SALON RED; ) | |
| MOJO REALTY, LLC; ) | |
| MOJO PROPERTIES, LLC; ) | |
| YOSEF ASSEFA; ) | |
| JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

_____ )

## COMPLAINT

Plaintiff, Bijan Modaressi ("plaintiff"), by his attorney, alleges on information and belief

based, *inter alia*, upon the investigation of his counsel, except as to those allegations which

pertain to plaintiff, which are based on personal information and belief, as follows:

### NATURE OF THE ACTION

1.      This is a civil RICO action, seeking recovery of damages arising from injury to plaintiff's

business or property proximately caused by the 18 U.S.C. § 1961 *et seq.* violations of Molook

Vedadi and Morteza Modaressi (collectively "RICO defendants").  As more fully detailed below,

the RICO defendants engaged in a pattern of racketeering activity by embezzling substantial

amounts of cash generated from plaintiff's Georgetown restaurant-nightclub, Chelsea's,

investing the funds in real estate in Maryland, fraudulently conveying the properties between

each other and to a third party, illegally moving some of the funds to offshore bank accounts in

the Islamic Republic of Iran ("Iran") without notifying the United States government, generating

several hundred thousand dollars from their investments of the embezzled funds, depositing

embezzled funds and investment proceeds in U.S. and Iranian bank accounts, failing to report

and pay taxes on the rental income generated from the properties and the interest accrued on the

certificates of deposit purchased by the RICO defendants in Iran with the embezzled funds, while

one of the RICO defendants was accepting welfare benefits from the United States government,

and committing these acts through several acts of mail and wire fraud.  The predicate acts were

committed within 10 years of each other, had continuity, and were related pursuant to 18 U.S.C.

§ 1961(5).  Therefore, plaintiff seeks treble damages, attorney fees, and costs of this suit against

the RICO defendants pursuant to 18 U.S.C. § 1964(c).

2.      In addition to the asserted RICO violations, plaintiff alleges numerous common law

violations arising from the unlawful activities of the RICO defendants—including conversion,

breach of fiduciary duty, unjust enrichment, fraudulent misrepresentation and/or omission,

fraudulent conveyance of real property, and interference with contractual relations—giving rise

to compensatory and punitive damages.

3.      Plaintiff further seeks emotional distress damages as a result of the RICO defendants

extreme and outrageous conduct, amounting to intentional infliction of emotional distress, which

was the proximate cause of plaintiff's psychiatric injuries, for which plaintiff is currently

undergoing treatment under the care of a psychiatrist in Los Angeles.

3a.     Plaintiff attempted in good faith to amicably resolve this matter through numerous

telephone calls and letters directed to the RICO defendants since 2003.  When plaintiff's

communications turned out to be unsuccessful, plaintiff approached the RICO defendants

through his counsel, Koorosh Dehghan, Esq., in an attempt to settle this matter.  However, the

RICO defendants largely ignored plaintiff's requests until plaintiff threatened litigation through the undersigned counsel. Plaintiff's attempts to settle this case through the undersigned counsel have also been unsuccessful. Indeed, filing this action is plaintiff's last resort.

## JURISDICTION AND VENUE

4.      This action arises under Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961-1968 (Racketeer Influenced and Corrupt Organizations Act), and numerous common law causes of action.

5.      This Court possesses jurisdiction to entertain this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction), and 18 U.S.C. § 1664(a) and (c) (RICO jurisdiction). The Court further possesses diversity jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332(a)(1), because plaintiff and all defendants are citizens of different states and the amount in controversy exceeds $75,000.

6.      In connection with the acts and conduct alleged, the RICO defendants directly and/or indirectly used means and instrumentalities of interstate commerce including, but not limited to, interstate wire and telephone communications, the United States mail, and other interstate express carriers.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the funds at issue were embezzled from Chelsea's, a business located and organized under the laws of the District of Columbia; the funds were transported interstate from the District of Columbia to Maryland and elsewhere; because at all relevant times, Molook Vedadi was plaintiff's trustee appointed to deposit in trust funds generated from Chelsea's for plaintiff's benefit; Defendants Vedadi and Modaressi used a money carrier based in the District of Columbia to launder embezzled funds to bank accounts in Iran; and because Morteza Modaressi was a head bartender at Chelsea's for

approximately two years and lived in the District of Columbia.  Further, venue is proper in this Court pursuant to 18 U.S.C. § 1965(b) in that, with respect to the allegations made, the ends of justice require that all defendants be brought before this Court.

## THE PARTIES

8.     Plaintiff, Bijan Modaressi, is a citizen of the State of California, residing at 8670 Burton Way, Apartment 225, Los Angeles, California 90048.

9.     Defendant Molook Vedadi is a citizen of the State of Maryland, residing at 10250 West Lake Drive, Unit 610, Bethesda, Maryland 20817.  Defendant Vedadi is Bijan Modaressi's and Morteza Modaressi's mother.

10.     Defendant Morteza Modaressi, also known as Mory Modaressi, is a citizen of the State of Maryland, residing at 109 Upshire Circle, Gaithersburg, Maryland 20878.  Defendant Modaressi is plaintiff's younger brother.  Defendant Modaressi and Julie Modaressi were married during the relevant times.

11.     Defendant Mojo Projects, LLC, operating as Salon Red, is a Maryland limited liability company located at 224 Main Street, Gaithersburg, Maryland 20878.  Salon Red is owned and controlled by defendant Modaressi.

12.     Defendant Mojo Realty, LLC, is a Maryland limited liability company located at 224 Main Street, Gaithersburg, Maryland 20878.  Mojo Realty, LLC is owned and/or controlled by defendant Modaressi.

13.     Defendant Mojo Properties, LLC, is a Maryland limited liability company located at 224 Main Street, Gaithersburg, Maryland 20878.  Mojo Properties, LLC is owned and/or controlled by defendant Modaressi.

14.     Defendant Yosef Assefa is a citizen of the State of Maryland, residing at 13031 Thyme Court, Germantown, Maryland 20874.

15.     John Does 1 to 4 are individual and corporate defendants who participated in or were members of a RICO enterprise with the common and shared purpose of colluding with defendants Vedadi and Modaressi to embezzle funds from Chelsea's and plaintiff and conceal said funds by investing them in real properties, offshore certificates of deposit, and legitimate businesses.  Plaintiff currently does not know the identity of John Does 1 to 4 and therefore reserves the right to add them to the complaint upon discovering their identity.

16.     John Does 5-10 are the individual purchasers and financial institutions that provided them with mortgages to purchase real properties acquired by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC from funds directly and indirectly embezzled from Chelsea's and plaintiff.  Plaintiff currently does not know the identity of John Does 5 to 10 and therefore reserves the right to add them to the complaint upon discovering their identity.

17.     Chelsea's, formally known as "Hammel's West," was a corporation organized under the laws of the District of Columbia, formerly located at 1055 Thomas Jefferson Street, N.W., Georgetown, Washington, DC 20007.  Chelsea's was in the restaurant and nightclub business.

## FACTUAL ALLEGATIONS

### A.     The RICO Defendants' Embezzlement of Funds from Chelsea's

18.     From 1982 to 2000, plaintiff was the sole owner of a popular restaurant-nightclub in Georgetown named Chelsea's.

19.     Defendant Modaressi was a head bartender at Chelsea's from 1986 to 1988.  During his employment at Chelsea's, defendant Modaressi engaged in a scheme to defraud plaintiff of

revenues generated from the sale of liquor at Chelsea's by offering "free" drinks to clients in exchange for large tips (in the range of $50 per person) collected by defendant Modaressi from these clients for his sole benefit. Defendant Modaressi also gave "free" drinks to several waitresses to serve to Chelsea's patrons in exchange for large tips (in the range of $50 per person). The waitresses, in turn, transferred a portion of the illegally gained tips to defendant Modaressi. This conduct deprived Chelsea's of significant sums of money. At the time defendant Modaressi was employed at Chelsea's, defendant Modaressi did not own real property and his sole source of income was Chelsea's. From information and belief, plaintiff avers that defendant Modaressi embezzled thousands of dollars from Chelsea's through the "free" drinks fraudulent scheme and other means of unlawful conduct. When plaintiff learned of defendant Modaressi's conduct, plaintiff immediately terminated defendant Modaressi's employment at Chelsea's.

20.     From 1986 to 1988, Julie Modaressi, defendant Modaressi's wife, was employed as a hostess at Chelsea's. During this period, Julie Modaressi had no other source of income.

21.     At all relevant times during the operation of Chelsea's, defendant Vedadi was plaintiff's trustee, fiduciary, and *confidant*.

22.     In the 1990s and in January-February 2000, defendant Vedadi lived in plaintiff's house located at 6609 Seven Locks Road, Bethesda, Maryland 20817.

23.     From 1995-2000, plaintiff appointed defendant Vedadi as his trustee for the purpose of collecting and depositing in trust profits generated from Chelsea's for plaintiff's benefit. The scope of trust did not include the purchase of real properties and their conveyance to others. At no time did plaintiff authorize defendant Vedadi to transfer his assets and trust moneys to defendant Modaressi.

24.     It is common in the nightclub industry for daily profits to be counted at the end of each night and delivered from the nightclub to the owner (or others designated by him) in large envelopes containing cash and credit card receipts.  The cash contained in these envelopes is typically large bills, including $100 and $50 bills.

25.     From 1997-2000, defendant Vedadi collected large envelopes of cash (containing mostly $100 and $50 bills) delivered from Chelsea's to plaintiff's house.  These envelopes were transported interstate and delivered by Chelsea's employees, including Roberta Mahinpoor and Reza Ghazamfari, from the District of Columbia to the State of Maryland.  The cash envelopes were usually delivered to plaintiff's house in  Bethesda on Thursdays.

26.     Instead of depositing these moneys in trust for the benefit of plaintiff, defendant Vedadi embezzled over $225,000 of cash from these envelopes from 1997-2000.  Defendant Vedadi further specifically instructed Roberta Mahinpoor and Reza Ghazamfari to deliver the cash envelopes directly to her.

27.     Defendant Vedadi concealed her embezzlement of these funds from plaintiff until May 2005.  Indeed, plaintiff was unaware of defendant Vedadi's embezzlement for many years.  The first time that plaintiff learned of defendant Vedadi's and Modaressi's embezzlement was in January 2003, when defendant Modaressi telephonically informed plaintiff of the embezzlement scheme and the investment of the funds in real estate in Maryland.

28.     In a letter dated May 3, 2005 written in Persian, defendant Vedadi informed plaintiff that "the first sum of money which I saved from your funds was $120,000, which, if I had not saved, would have been wasted, compounding to the sums of money which you have already wasted.  *Anyways, it was your money*."  (emphasis added).  In this letter, defendant Vedadi admitted to her embezzlement of funds from Chelsea's and plaintiff in collusion with defendant Modaressi

and the investment of these funds in three properties in Maryland.  Defendant Vedadi further noted the participation and assistance of Julie Modaressi in the acquisition, rental, and repair of these properties.  In her letter, defendant Vedadi stated that defendant Modaressi "has worked hard and has taken care of all this; and at my insistence he has agreed to acquire title to these properties.  And he has said that when I [Ms. Vedadi] die, he will transfer the deeds to [plaintiff] Bijan."

      **B.**     **The RICO Defendants' Investment of Funds Embezzled from Chelsea's**

        **1. The Transfer of Embezzled Funds to Offshore Accounts in Iran**

29.     While receiving welfare benefits and no income in the United States, defendant Vedadi illegally transferred tens of thousands of dollars from the United States to a bank in Iran (Bank Melli Iran, Bagh-e-Saba Branch), where she purchased certificates of deposit in her name and in the name of others, including Soraya Riahi, Foroogh Riahi, and Ms. Dashtestani.  The certificates of deposit were purchased mostly between September 1997 and October 2000, and as late as 2003.  On the basis of information and belief, plaintiff avers that there may be other certificates of deposit purchased by defendant Vedadi with embezzled funds.

30.     Defendant Vedadi transferred the funds offshore using money carriers, known in Persian as "Sarraf," who would take U.S. dollars in the United States and deliver Iranian currency to defendant Vedadi's designees in Iran, without reporting the transaction to U.S. authorities.  On at least one occasion, defendant Vedadi transferred the funds offshore through a money carrier in the District of Columbia named Shirazi Corp., a company that was raided by the FBI following the passage of the USA Patriot Act.  On at least one occasion, defendant Vedadi used the services and/or assistance of Ali Riahi to illegally transfer funds from the United States to Iran.

31.     From information and belief, plaintiff avers that the funds illegally funneled to Iran were embezzled from Chelsea's and plaintiff by defendant Vedadi during her position as plaintiff's trustee.  Defendant Vedadi failed to inform the United States government of her transfer of these funds to offshore bank accounts in Iran.

32.     From information and belief, plaintiff avers that defendant Modaressi assisted defendant Vedadi to illegally transfer the funds to offshore bank accounts in Iran by (a) identifying a money carrier in the United States to conduct the currency exchange, (b) transporting defendant Vedadi and the embezzled funds to the money carrier, (c) making telephone calls or sending faxes to arrange for the transfer, and (d) preparing on behalf of or advising defendant Vedadi to prepare false tax returns concerning the rental income generated from the properties at issue.

33.     In furtherance of her embezzlement and money laundering scheme, defendant Vedadi executed a power of attorney in Iran on September 10, 1997, authorizing the bank manager at Bank Melli Iran, Bagh-e-Saba Branch, where she purchased certificates of deposit, to open new accounts, purchase certificates of deposit, and transfer balances among existing accounts.

34.     Said conduct of defendants Vedadi and Modaressi was in collusion with the common and shared purpose of embezzling funds from Chelsea's and plaintiff, concealing the embezzled funds through investments in offshore accounts and real estate, with the intent to permanently deprive plaintiff of his moneys.  Defendants Vedadi and Modaressi thus formed an "enterprise" within the meaning of 18 U.S.C. § 1961(4) to carry out their embezzlement scheme in collusion with one another.

### 2.  The Purchase of Three Properties with Embezzled Funds

35.     Defendants Vedadi and Modaressi were associated in fact with the common and shared purpose of embezzling funds from Chelsea's and plaintiff, investing the capital in real estate in

Maryland, with the intent to permanently deprive plaintiff of his moneys. Defendants Vedadi and Modaressi thus formed an "enterprise" within the meaning of 18 U.S.C. § 1961(4) to carry out their embezzlement scheme in collusion with one another.

36.     Defendants Vedadi and Modaressi further used the real estate services, advice, and expertise of Julie Modaressi, defendant Modaressi's then wife, in carrying out their embezzlement scheme. On the basis of information and belief, plaintiff avers that Julie Modaressi was aware of the fact that the moneys used to purchase the properties at issue was embezzled from Chelsea's and plaintiff at the time that she provided real estate services to defendants Vedadi and Modaressi. Julie Modaressi and defendants Vedadi and Modaressi thus constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

37.      In pursuit of their embezzlement scheme, defendants Vedadi and Modaressi purchased three properties in Maryland using funds embezzled from Chelsea's and plaintiff and conveyed title to the properties among each other and to a third party, Yosef Assefa. Defendants Vedadi and Modaressi further leased the properties to tenants, consumed the rental income, and failed to report and pay taxes on the rental income generated from the properties. On the basis of information and belief, plaintiff avers that defendants Vedadi and Modaressi paid a penalty to the taxing authorities for their failure to pay taxes on the rental income generated from the leased properties.

38.     On or about July 27, 2001, defendants Vedadi and Modaressi purchased a property located at 18732 Winding Creek Place, Germantown, Maryland 20874 for $120,900 paid for in cash using moneys embezzled by defendant Vedadi from Chelsea's and plaintiff. Defendants Vedadi and Modaressi subsequently leased the property, consumed the rental income, did not report or pay taxes on the rental income, and failed to notify plaintiff of their activities. Nor did

the RICO defendants pay plaintiff the monetary value of the property.  Defendant Vedadi held title to the property from the date of its purchase until June 10, 2005, when she transferred the title to defendant Modaressi.

39.    On or about June 27, 2002, defendants Vedadi and Modaressi purchased a property located at 3752 Bel Pre Road, Apartment 9, Silver Spring, Maryland 20906 for $61,600 paid for in cash using moneys embezzled by defendant Vedadi from Chelsea's and plaintiff.  Defendants Vedadi and Modaressi subsequently leased the property, consumed the rental income, did not report or pay taxes on the rental income, and failed to notify plaintiff of their activities.  Nor did the RICO defendants pay plaintiff the monetary value of the property.  Defendant Vedadi held title to the property from the date of its purchase until June 10, 2005, when she transferred the title to defendant Modaressi.

40.    On or about October 24, 2001, defendants Vedadi and Modaressi purchased a property located at 13031 Thyme Court, Germantown, Maryland 20874 for $105,300 paid for with an $80,000 mortgage and $25,300 in cash using moneys embezzled by defendant Vedadi from Chelsea's and plaintiff.  Defendants Vedadi and Modaressi used the real estate services of Julie Modaressi to purchase this property.  Defendants Vedadi and Modaressi subsequently leased the property, consumed the rental income, did not report or pay taxes on the rental income, and failed to notify plaintiff of their activities.  Nor did the RICO defendants pay plaintiff the monetary value of the property.

41.    On or about March 11, 2005, defendant Vedadi sold this property to Yosef Assefa for $245,000, using Julie Modaressi as her listing agent.  Defendants Vedadi and Modaressi failed to transfer the proceeds of this sale to plaintiff.  Instead, they reinvested the proceeds in the form of down payments for preconstruction properties in Maryland.

42.     Defendant Vedadi's sale of this property to Yosef Assefa amounted to a fraudulent conveyance and/or transfer because the property was purchased using funds embezzled from Chelsea's and plaintiff.  Consequently, defendant Assefa does not hold legal title to this property.

### 3.  The Purchase of Hair Salons with Embezzled Funds

43.     On the basis of information and belief, plaintiff avers that in 1989, defendant Modaressi used funds embezzled from Chelsea's and plaintiff through his "free" drinks fraudulent scheme and other unlawful activities to purchase an ownership interest in a hair salon located in Rockville Pike, Maryland, named "New Wave."  At the time New Wave was purchased, defendant Modaressi only possessed $25,000-$30,000 of cash which was largely derived from the sale of a condominium in Bethesda Park, Maryland.  On the basis of information and belief, the down payment placed by defendant Modaressi on New Wave exceeded $30,000.  New Wave turned out to be unsuccessful, and in 1999, defendant Modaressi sold his ownership interest in New Wave to his business partner for approximately $25,000, which was paid to defendant Modaressi in installments.

44.     On or about 1999, defendant Modaressi purchased a multi-story commercial townhouse in Kentlands, Maryland and spent over $400,000 to build a large hair salon named Salon Red located on the main level of the townhouse.  On the basis of information and belief, plaintiff avers that defendant Modaressi's purchase of Salon Red was, in large part, funded by moneys embezzled by defendants Vedadi and Modaressi from Chelsea's and plaintiff.

45.     Salon Red is located at 224 Main Street, Gaithersburg, Maryland 20878, title to which is held by Mojo Projects, LLC, a Maryland limited liability company owned and controlled by defendant Modaressi.  The value of the real estate upon which Salon Red is located has significantly appreciated since its purchase by defendant Modaressi in 1999.

46.     Defendant Mojo Projects, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in legitimate businesses such as Salon Red.

47.     Defendant Mojo Properties, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in real estate and legitimate businesses.

48.     Defendant Mojo Realty, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in real estate and legitimate businesses.

49.     On the basis of information and belief, plaintiff avers that defendant Vedadi knew or was aware that defendant Modaressi purchased Salon Red through embezzled funds.

50.     Despite plaintiff's numerous demands for the past few years, defendants Vedadi and Modaressi refuse to return the embezzled funds and their investment proceeds to plaintiff.

### C.     The Dissolution of Chelsea's Due to the RICO Defendants' Embezzlement

51.     Chelsea's was generating between $7,000 to $10,000 of cash revenues per week—in addition to credit card payments—at the peak of its success.

52.     In 2000, Chelsea's was shut down and its assets were seized by the District of Columbia government due to insufficient funds to satisfy a portion of its unpaid sales tax owed to the District of Columbia. Prior to Chelsea's dissolution, defendants Vedadi and Modaressi knew that plaintiff desperately needed funds to avoid the dissolution of Chelsea's and the tax sale of his Bethesda house. Nonetheless, defendants Vedadi and Modaressi concealed their embezzlement from plaintiff and failed to tender the embezzled funds to assist plaintiff when he needed the money most.

53.     In 2000, the District of Columbia executed a tax lien upon plaintiff's house located in Bethesda, Maryland, and applied $100,000 from the sales proceeds in satisfaction of the unpaid sales tax owed by Chelsea's to the District of Columbia.

54.     From information and belief, plaintiff avers that had the RICO defendants not embezzled over $250,000 of cash from Chelsea's and plaintiff, plaintiff would have had sufficient funds to tender to the District of Columbia in satisfaction of Chelsea's unpaid sales tax, thereby avoiding the tax sale of plaintiff's house in Bethesda and the dissolution of his sole business and source of income, Chelsea's.  The RICO defendants' embezzlement of funds from Chelsea's and plaintiff was the proximate cause of the tax sale of plaintiff's house and the dissolution of Chelsea's.

**COUNT ONE**

**(18 U.S.C. § 1964(c))**

55.     Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

56.     Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1964(c) and brings this action pursuant to 18 U.S.C. § 1964(c).

57.     Each of the defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC is a "person" within the meaning of 18 U.S.C. § 1961(3).

58.     Defendants Vedadi and Modaressi (and any individuals who aided and abetted or otherwise participated in their unlawful activities, including Julie Modaressi) are an "enterprise" within the meaning of 18 U.S.C. § 1961(4), in that they are associated in fact with the common and shared purpose of embezzling funds from Chelsea's and plaintiff, investing the capital in real estate in Maryland and certificates of deposit in Iran, with the intent to permanently deprive plaintiff of his moneys.  During the relevant times as described above in this complaint, this enterprise engaged in, or its activities affected, interstate and/or foreign commerce.

59.     Defendant Mojo Projects, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in legitimate businesses such as Salon Red.

60.     Defendant Mojo Properties, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in real estate and legitimate businesses.

61.     Defendant Mojo Realty, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it was created by defendant Modaressi to conceal embezzled assets through their investment in real estate and legitimate businesses.

62.     During the relevant times, defendants Vedadi and Modaressi were associated with the enterprises noted in paragraphs 58 through 61 above.

63.     During the relevant times, defendants Vedadi and Modaressi conducted and participated, directly and indirectly, in the racketeering activity complained of herein.

64.     The said racketeering activity consisted of two or more incidents of racketeering activity committed by the RICO defendants.  The predicate acts were committed within 10 years of each other, had continuity, and were related pursuant to 18 U.S.C. § 1961(5).

65.     The racketeering activity, as described in 18 U.S.C. § 1961(1), includes but is not limited to:

   a.      Repeated acts of money laundering within the meaning of 18 U.S.C. § 1956.

   b.      Repeated acts of wire fraud within the meaning of 18 U.S.C. § 1343.

   c.      Repeated acts of mail fraud within the meaning of 18 U.S.C. § 1341.

   d.      Repeated acts of interstate transportation of stolen property within the meaning of 18 U.S.C. § 2315.

e.     Repeated acts of embezzlement from interstate shipment within the meaning of 18 U.S.C. § 659.

f.     Repeated acts of engaging in monetary transactions in property derived from unlawful activity within the meaning of 18 U.S.C. § 1957.

g.     Repeated acts indictable under the Currency and Foreign Transactions Reporting Act within the meaning of 18 U.S.C. § 1961(1).

h.     Repeated acts of racketeering within the meaning of 18 U.S.C. § 1952.

i.     Repeated acts of receipt of unlawful welfare fund payments by defendant Vedadi within the meaning of 18 U.S.C. § 1954.

66.     These acts of racketeering constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and were interrelated by distinguishing characteristics, in that they had the same purpose, results, participants, victim, and methods of commission.

67.     This racketeering activity was a regular way of conducting the RICO defendants' enterprise and their participation in the enterprise.  The racketeering activity was also the regular way in which defendant Modaressi funded, invested, or operated his business, Salon Red, formally known as Mojo Projects, LLC.  The racketeering activity was also the regular way in which defendant Modaressi funded, invested, or operated his real estate businesses, Mojo Properties, LLC, and Mojo Realty, LLC.

68.     The racketeering activity was the proximate cause of plaintiff's injuries, including the loss of embezzled funds and their investment proceeds, the dissolution of Chelsea's and lost profits arising therefrom, and the tax sale of plaintiff's Bethesda house.

69.     Plaintiff was therefore directly injured by the RICO defendants and by Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC, in his business and property in an amount

to be determined at trial, by reason of the aforementioned defendants' violations of 18 U.S.C. § 1962 and within the meaning of 18 U.S.C. § 1964(c).

## COUNT TWO

### (violation of 18 U.S.C. § 1962(a))

70.     Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

71.     For the purpose of this claim, the enterprise formed by defendants Vedadi and Modaressi, comes within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

72.     For the purpose of this claim, the enterprises Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC come within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

73.     During the relevant times, the RICO defendants derived income, directly or indirectly, from the above described patterns of racketeering activity, in which they participated as principals within the meaning of 18 U.S.C. § 1961(9).  These RICO defendants also used or invested, directly or indirectly, a part of that income or the proceeds of that income to acquire an interest in, or establish, or operate the said enterprise described above, when the said enterprise was engaged in interstate or foreign commerce, all within the meaning of 18 U.S.C. § 1962(a).

74.     Plaintiff was directly injured by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Properties, and Mojo Realty, LLC, in his business and property in an amount to be determined at trial, by reason of the aforementioned defendants' violations of 18 U.S.C. 1962(a), all within the meaning of 18 U.S.C. § 1964(c).

## COUNT THREE

### (violation of 18 U.S.C. § 1962(b))

75.     Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

76.    For the purpose of this claim, the enterprise formed by defendants Vedadi and Modaressi, comes within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

77.    For the purpose of this claim, the enterprises Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC come within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

78.    During the relevant times, defendants acquired or maintained an interest, directly or indirectly, in the said enterprise, through a pattern of racketeering activity, when the said enterprise was engaged in interstate or foreign commerce, all within the meaning of 18 U.S.C. § 1962(b).

79.    Plaintiff was directly injured by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, in his business and property in an amount to be determined at trial, by reason of the aforementioned defendants' violations of 18 U.S.C. 1962(b), all within the meaning of 18 U.S.C. § 1964(c).

## COUNT FOUR

### (violation of 18 U.S.C. § 1962(c))

80.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

81.    For the purpose of this claim, the enterprise formed by defendants Vedadi and Modaressi, comes within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

82.    For the purpose of this claim, the enterprises Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC come within the meaning of 18 § U.S.C. 1961(4) and 18 U.S.C. § 1962(a).

83.    During the relevant times, while employed by or associated with the said enterprise, defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the said enterprise through a pattern of racketeering activity, when the said enterprise was engaged in interstate or foreign commerce, all within the meaning of 18 U.S.C. § 1962(c).

84.    Plaintiff was directly injured by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC in his business and property in an amount to be determined at trial, by reason of the aforementioned defendants' violations of 18 U.S.C. 1962(c), all within the meaning of 18 U.S.C. § 1964(c).

## COUNT FIVE

### (conversion)

85.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

86.    As described above, defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, converted substantial sums of money from Chelsea's and plaintiff for their own use, exercising ownership, dominion, and control over said moneys and the investment proceeds derived from the embezzled funds in denial of plaintiff's rights thereto.

87.    The aforementioned defendants' embezzlement of substantial sums of money from Chelsea's and plaintiff with the intent to permanently deprive plaintiff from said funds was a serious interference with plaintiff's right of possession of his cash warranting return of the funds and the investment proceeds of these moneys.

88.    These defendants' conduct was also the proximate cause of plaintiff's injuries in an amount to be determined at trial, including loss of money and investment proceeds, the dissolution of Chelsea's, and the tax sale of his house.

## COUNT SIX

### (fraudulent misrepresentation and/or omission)

89.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

90.    As described above, defendants Vedadi and Modaressi made repeated misrepresentations and omissions concerning their embezzlement of funds from Chelsea's and plaintiff and investment of said funds in properties, certificates of deposit, and legitimate businesses.

91.    These misrepresentations and omissions were material, as they affected plaintiff's day-to-day business decisions at Chelsea's as well as the forced dissolution of Chelsea's and the tax sale of plaintiff's Bethesda house in 2000.

92.    Defendants Vedadi and Modaressi made the misrepresentations and omissions with knowledge of their falsity, as they knew that they had embezzled funds from Chelsea's and plaintiff and invested them in properties, certificates of deposit, and legitimate businesses.

93.    Defendant Vedadi further made various misrepresentations and omissions with respect to plaintiff's moneys when she was purportedly acting as plaintiff's trustee and fiduciary.

94.    Plaintiff justifiably relied upon defendant Vedadi's and Modaressi's misrepresentations and omissions.

95.    As a result of plaintiff's justifiable reliance on defendant Vedadi's and Modaressi's misrepresentations and omissions, plaintiff suffered injuries in an amount to be determined at trial, which were proximately caused by said misrepresentations and omissions.

## COUNT SEVEN

### (breach of fiduciary duty)

96.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

97.    In her position as plaintiff's trustee, defendant Vedadi owed plaintiff fiduciary duties, including the duties of care, loyalty, and respect.

98.    Defendant Vedadi breached her fiduciary duties to plaintiff when she embezzled funds from Chelsea's and plaintiff for her own benefit, concealed her embezzlement, acted in collusion

with defendant Modaressi in investing the embezzled funds in properties, certificates of deposit, and elsewhere, and made material misrepresentations and omissions concerning her unlawful conduct. Defendant Vedadi's breach of fiduciary duty was grave, as she acted in a manner totally inconsistent with that of a trustee.

99.     Defendant Vedadi's breach of fiduciary duty proximately caused plaintiff's injuries, including loss of moneys, the dissolution of Chelsea's, and the tax sale of plaintiff's house.

### COUNT EIGHT

### (unjust enrichment)

100.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

101.    Defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, were unjustly enriched from their embezzlement of substantial sums of money from Chelsea's and plaintiff. The capital appreciation of the investments made by the aforementioned defendants using plaintiff's moneys amounts to several hundred thousand dollars.

102.    Plaintiff therefore conferred a great benefit upon the aforementioned defendants.

103.    Under these circumstances, it would be unjust and inequitable for defendants to retain this benefit. Consequently, the Court should order restitution of the embezzled funds and the capital appreciation of the investments made with these funds.

### COUNT NINE

### (fraudulent conveyance and/or transfer of real property)

104.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

105.    On October 24, 2001, defendant Vedadi purchased a property located at 13031 Thyme Court, Germantown, Maryland 20874 using funds embezzled from Chelsea's and plaintiff.

Defendant Vedadi did not hold good and legal title to this property because her down payment consisted of moneys embezzled from Chelsea's and plaintiff.

106.    On March 11, 2005, defendant Vedadi "sold" this property to Yosef Assefa for $245,000. Because defendant Vedadi did not hold good and legal title to this property, her "sale" of the property to defendant Assefa amounted to a fraudulent conveyance or transfer.

107.    The "sale" of the property was therefore null and void.

### COUNT TEN

### (constructive trust)

108.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

109.    Defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, embezzled substantial sums of money from Chelsea's and plaintiff, invested the funds in real estate, certificates of deposit in offshore accounts, and deposited some of the funds in their U.S. bank accounts. The aforementioned defendants subsequently transferred, sold, or conveyed the embezzled funds and properties purchased with those funds to others.

110.    This conduct was inequitable and injurious to plaintiff.

111.    The Court should thus impose a constructive trust inuring to plaintiff's benefit on the real properties, U.S. bank accounts, and the personal, business, and tangible assets held by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, which were acquired, directly or indirectly, through funds embezzled from Chelsea's and plaintiff.

112.    The Court should further impose a constructive trust inuring to plaintiff's benefit on the real properties sold by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC to third parties, including defendants Assefa and John Does 5 to 10.

## COUNT ELEVEN

### (interference with contractual relations)

113.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

114.    Plaintiff, through his business, Chelsea's, had an implicit contractual relation with the patrons of Chelsea's to provide restaurant and nightclub services.  Indeed, Chelsea's was a successful and popular restaurant nightclub prior to its closure in February 2000.  At the peak of its success, Chelsea's was generating between $7,000 to $10,000 of cash revenues per week in addition to credit card payments.

115.    Defendants Vedadi and Modaressi knew of this implicit contractual relationship between Chelsea's and its patrons and were fully aware of the success of Chelsea's at the time that they embezzled funds from Chelsea's.

116.    Defendants Vedadi and Modaressi embezzled over $225,000 from Chelsea's, as a result of which plaintiff was unable to properly account for and pay the sales tax owed by Chelsea's to the District of Columbia.

117.    Defendant Vedadi's and Modaressi's embezzlement of funds from Chelsea's was the proximate cause of Chelsea's dissolution.

118.    Defendant Vedadi's and Modaressi's embezzlement of funds from Chelsea's was intentional and without justification, amounting to an interference with contractual relations.

119.    As a result of defendant Vedadi's and Modaressi's interference with plaintiff's contractual relations with Chelsea's patrons, plaintiff lost his business and his sole source of income and sustained substantial economic injuries.

120.    Plaintiff is thus entitled to damages for the lost profits sustained by Chelsea's from the date of its dissolution until the present and any other damages deemed proper by the Court.

## COUNT TWELVE

### (intentional infliction of emotional distress)

121.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

122.    Defendant Vedadi has favored defendant Modaressi over plaintiff for many years.  This favoritism went so far as to result in embezzlement of funds from plaintiff and their illegal transfer to defendant Modaressi.

123.    When plaintiff's father passed away in 2002, plaintiff paid for all funeral expenses and other costs even though he had lost his business.  Defendants Vedadi and Modaressi refused to contribute to these expenses.

124.    When plaintiff's son died in a car accident on September 22, 2005, defendant Vedadi did not attend the funeral and failed to return the funds embezzled from plaintiff despite his numerous demands.

125.    Defendants Vedadi and Modaressi were aware that plaintiff suffered from major depression and was undergoing psychiatric treatment as a result of their conduct.  Defendants Vedadi and Modaressi further knew as far back as 1998 that plaintiff was susceptible to major depression and psychiatric illness, as he suffered a nervous breakdown and was hospitalized for three days in 1998.

126.    Defendant Vedadi's and Modaressi's embezzlement of moneys from plaintiff, repeated misrepresentations and omissions to plaintiff concerning their conduct, and stern refusal to return plaintiff's moneys amounts to extreme and outrageous conduct.  This is particularly so in light of the family relationship between plaintiff and defendants Vedadi and Modaressi and the loss of plaintiff's business and house as a result of the conduct of his brother and mother.

127.    Defendant Vedadi's and Modaressi's aforementioned conduct was intentional and recklessly directed at plaintiff with full knowledge of plaintiff's susceptibility to major depression and psychiatric illness.

128.    Defendant Vedadi's and Modaressi's extreme and outrageous conduct caused severe emotional distress to plaintiff and was the proximate cause of plaintiff's injuries.

129.    Plaintiff is thus entitled to emotional distress damages and related psychiatric expenses as well as punitive damages.

## COUNT THIRTEEN

### (declaratory judgment)

130.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

131.    On October 24, 2001, defendant Vedadi purchased a property located at 13031 Thyme Court, Germantown, Maryland 20874 using funds embezzled from Chelsea's and plaintiff. Defendant Vedadi did not hold good and legal title to this property because her down payment consisted of moneys embezzled from Chelsea's and plaintiff.

132.    On March 11, 2005, defendant Vedadi "sold" this property to Yosef Assefa for $245,000. Because defendant Vedadi did not hold good and legal title to this property, her "sale" of the property to defendant Assefa amounted to a fraudulent conveyance or transfer.

133.    Plaintiff therefore seeks a declaratory judgment from this Court indicating that (a) defendant Vedadi's "sale" of the property located at 13031 Thyme Court, Germantown, Maryland 20874 to defendant Assefa was a fraudulent conveyance or transfer and thus null and void, (b) defendant Assefa does not hold good and legal title to the property, and (c) title to the property belongs to plaintiff.

**DEMAND FOR BENCH TRIAL**

134.    Plaintiff demands a bench trial before a United States District Judge.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief against defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, and John Does 1-4 and each of them, jointly and severally, as follows:

(a) Judgment in favor of plaintiff and against all defendants for the counts enumerated above.

(b) An award in favor of plaintiff and against all defendants for the damages sustained by plaintiff as a result of defendant Vedadi's and Modaressi's RICO violations and other wrongdoing alleged herein.

(c) Awarding plaintiff treble damages, attorney's fees, and the costs of this action pursuant to 18 U.S.C. § 1961(1) *et seq.* and 18 U.S.C. 1964(c).

(d) Awarding plaintiff compensatory and punitive damages for conversion, breach of fiduciary duty, fraudulent misrepresentation and/or omission, and fraudulent conveyance.

(e) Awarding plaintiff compensatory damages for interference with contractual relations.

(f) Awarding plaintiff lost profits for the income that would have been generated by Chelsea's had it not been shut down in 2000 as a result of defendants' embezzlement and concealment of embezzled funds prior to and after the dissolution of Chelsea's.

(g) Awarding plaintiff the capital appreciation of plaintiff's house in Bethesda from 2000 to the present, had it not been sold in a tax sale as a result of defendants' embezzlement and concealment of embezzled funds.

(h) Requiring defendants to disgorge all profits gained through their investment of embezzled funds and proceeds there from as restitution for their unjust enrichment.

(i) Awarding plaintiff emotional distress damages and expenses for psychiatric treatment as a result of defendants' extreme and outrageous conduct, as well as punitive damages.

(j) Awarding plaintiff attorney's fees and the costs of this action for the common law claims raised in this complaint should the RICO claims fail.

(k) Imposing a constructive trust inuring to plaintiff's benefit on the real properties, U.S. bank accounts, and the personal, business, and tangible assets held by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Realty, LLC, and Mojo Properties, LLC, which were acquired, directly or indirectly, through funds embezzled from Chelsea's and plaintiff.

(l)  Prejudgment and post-judgment interest on all of the above counts.

(m) Awarding plaintiff such other and further relief as the Court may deem just and proper.

PLAINTIFF PRAYS FOR RELIEF against defendant Yosef Assefa as follows:

(n) Judgment in favor of plaintiff and against defendant Assefa on Counts 9, 10 and 13.

(o) Placing a constructive trust on the property located at 13031 Thyme Court, Germantown, Maryland 20874.

(p)  Awarding plaintiff a declaratory judgment that (a) defendant Vedadi's "sale" of the property located at 13031 Thyme Court, Germantown, Maryland 20874 to defendant Assefa was a fraudulent conveyance and/or transfer and thus null and void, (b) defendant Assefa does not hold good and legal title to this property, and (c) title to this property belongs to plaintiff.

(q)  Awarding plaintiff prejudgment and post judgment interest as well as attorney's fees and costs.  And,

(r) Awarding plaintiff such other and further relief as the Court may deem just and proper.

PLAINTIFF PRAYS FOR RELIEF against defendants John Does 5-10 as follows:

(s) Placing a constructive trust on the properties acquired by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC, through funds embezzled from Chelsea's and plaintiff and subsequently sold to defendants John Does 5-10.

(t) Awarding plaintiff a declaratory judgment that the sale of the properties by defendants Vedadi, Modaressi, Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC to John Does 5 to 10 was a fraudulent conveyance and/or transfer and thus null and void, (b) defendants John Does 5 to 10 do not hold good and legal title to the subject properties, and (c) title to these properties belongs to plaintiff.

(u) Awarding plaintiff prejudgment and post judgment interest as well as attorney's fees and costs.  And,

(v) Awarding plaintiff such other and further relief as the Court may deem just and proper.

Dated: December 16, 2005

_____
Stefan Shaibani (Bar No. 490024)
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, DC 20036
Tel:  (202) 862-4335
Fax: (202) 828-4130

*Attorney for plaintiff Bijan Modaressi*