# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

BIJAN MODARESSI,          )
                            )
     Plaintiff,        )
                            )
     vs.           )
                            )
MOLOOK VEDADI;       )
MORTEZA MODARESSI,   )
Also known as MORY MODARESSI; )
MOJO PROJECTS, LLC,    )    Court No. 05 Civ. 2424 (JDB)
Operating as SALON RED;   )
MOJO REALTY, LLC;     )
MOJO PROPERTIES, LLC;   )
YOSEF ASSEFA;        )
JOHN DOES 1-10,       )
                            )
     Defendants.     )
_____ )

### PLAINTIFF'S OPPOSITION TO THE RICO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE, AND PLAINTIFF'S MOTION TO STRIKE THE RICO DEFENDANTS' MOTION TO DISMISS AND APPLICATION FOR ENTRY OF DEFAULT AGAINST THE RICO DEFENDANTS

/s/ Stefan Shaibani

OF COUNSEL:                Stefan Shaibani (Bar No. 490024)
Koorosh Dehghan, Esq.        LITIGATION ASSOCIATE, PLLC
Dehghan Business & Legal Consulting   1150 Connecticut Avenue, N.W.
18534 Cherry Laurel Lane       Suite 900
Gaithersburg, Maryland 20879     Washington, DC 20036
                               Tel:  (202) 862-4335
                               Fax: (202) 828-4130

Dated: January 30, 2006          *Attorney for plaintiff Bijan Modaressi*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO THE RICO DEFENDANTS' MOTION TO DISMISS,
AND PLAINTIFF'S MOTION TO STRIKE AND APPLICATION FOR ENTRY OF
DEFAULT AGAINST THE RICO DEFENDANTS……………………………………… 2

BACKGROUND………………………………………………………………………... 2

ARGUMENT…………………………………………………………………………… 5

I.      Venue Is Proper In The District Of Columbia Pursuant To 28 U.S.C. § 1391(b)(2)
        Because A Substantial Part Of The Events Giving Rise To Plaintiff's Claims
        Occurred In The District Of Columbia Where Chelsea's Was Operating For
        Eighteen Years……………………………………………………………………….. 5

II.     RICO's Specific Venue Provision, 18 U.S.C. § 1965, Supplements
        Section 1391(b), And Venue Is Proper In The District Of Columbia
        Under 18 U.S.C. § 1965(b)…………………………………………………………… 11

III.    The Forum *Non Conveniens* Factors Enumerated In *Gulf Oil Co.* Weigh Heavily
        In Favor Of Maintaining This Action In The District Of Columbia……………… 15

IV.     Should The Court Determine That The District Of Columbia Is An Improper
        Venue In This Case, Plaintiff Insists That The Court Transfer This Action To
        The District Court For The District of Maryland Pursuant To 28 U.S.C. § 1406(a)    20

V.      The RICO Defendants' Motion To Dismiss Should Be Stricken Because It
        Was Filed Out of Time, Without Leave Of Court, And In Violation Of The
        Court's January 5, 2006 Order……………………………………………………… 26

VI.     The Court Should Grant Plaintiff's Application For Entry Of Default Against
        The RICO Defendants Because Of Their Inexcusable Delay In Responding To The
        Complaint, Failure To Raise A Meritorious Defense, And Prejudice To Plaintiff…

CONCLUSION………………………………………………………………………… 29

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Barber v. American Security Bank*, 841 F.2d 1159, 1162 (D.C. Cir. 1998)......................................24

*Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) ....................................10

*Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 171 (S.D. Tex. 1995) ............................16

*Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 430 (1965) (section 1406(a)................18

*Cabana v. Forcier*, 200 F.R.D. 9, 14 (D.Mass. 2001) ……………………………………………24-25

*Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 944 (E.D.Va. 1991) ...............................15

*College of Norte Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 19
752 A.2d 265, 271 (Md.Ct.App. 2000)...................................................19

*Crenshaw v. Antokol*, 287 F. Supp.2d 37, 42 (D.D.C. 2003)...........................................18

*Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*,
719 F. Supp. 446, 450 (W.D.N.C. 1989) .........................................17

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ......................13

*Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992) ...........................12

*Eastern Dist. Repetitive Stress Injury Lit.*, 850 F. Supp. 188, 195
(E.D.N.Y. 1994) .......................................................17

*Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844-45
(D.D.C. 1996) .........................................................24

*Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 95
(S.D.N.Y. 1995). .........................................................16

*Etienne v. Wolverine Tube, Inc.*, 12 F. Supp.2d 1173 (D.Kan. 1998) ...............................9

*Farmers Bank of the State of Del. v. Bell Mortgage Corp.*, 452 F. Supp. 1278
(D.Del. 1978) .........................................................11

*Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535
U.S. 743, 757-58 (2002) .........................................................23

*First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 261-62 (6th Cir. 1998) ...................................8

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 25
375 F.3d 922, 926-29 (9th Cir. 2004) ................................................25

*Gatz v. Ponsoldt*, 271 F. Supp.2d 143, 1152-54 (D.Neb. 2003) .......................20

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) .......................18

*Goldlawr, Inc.*, 369 U.S. at 466; *Burnett*, 380 U.S. at 430................19

*Green*, 420 F.3d at 108-110 ................................................25

*Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)............................5

*Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F.
Supp. 1163, 1166 (S.D. Tex. 1994) ................................................14

*Hall v. South Orange*, 89 F. Supp.2d 488, 491-93 (S.D.N.Y. 2000)................7

*Hamilton v. J.C. Penney Co., Inc.*, 127 Fed. Appx. 47, at 49 (3d Cir. 2005) ..................23

*Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ...................14

*I.M.D. USA, Inc. v. Shalit*, 92 F. Supp.2d 315, 316-18 (S.D.N.Y. 2000) ........................6

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383 (W.D. La. 1996) .................13

*Ideal Stencil Machine & Tape Co. v. Merchiori*, 600 F.
Supp. 185, 190 (S.D.Ill. 1985) ................................................9

*Immuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D.
561, 568- 574 (S.D. Fla. 2001) ................................................24

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) ...................14

*Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ...................23

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 185 ...................7

*Lynch*, 430 F.3d 600, 605 (2d Cir. 2005) ................................................22

*Merchants Nat'l Bank v. Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991) ...................10

*Merchiori*, 600 F. Supp. 188 ................................................20

*Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1291 (D.Wisc. 1985) ...................16

*New York v. Green*, 420 F.3d 99, 108-110 (2d Cir. 2005)...................................................23

*Packer v. Kaiser Foundation Health Plan* 728 F. Supp. 8, 11 (D.D.C. 1989) .................13

*Rumsfeld v. Padilla*, 542 U.S. 426, 464 n.7 (2005) ........................................................18

*Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1162
(5th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987) ........................................................14

*Scott v. Monsanto Co.*, 868 F.2d 786, 788-789 (5th Cir. 1989). .....................................19

*Seneca Ins. Co. v. Commercial Trans., Inc.*, 906 F. Supp. 239, 241
(M.D. Penn. 1995) ...........................................................................................................9

*Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) .......................9

*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970),
 *cert. denied*, 401 U.S. 910 (1971) ...............................................................................14

*Schexnider*, 817 F.2d at 1162. .......................................................................................15

*Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983) .........................................18

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
374 F.3d 158, 167-179 (2d Cir. 2004) 28 U.S.C. § 1406(a).............................................25

*supra*, at 3-4; *Dicken v. United States*, 862 F. Supp. 91, 94-95 (D.Md. 1994)...............15

*Thyssen Steel Co. v. United States*, 712 F. Supp. 202, 203 (Ct. Int'l Trade 1989) ..........25

*Tibbetts v. Sweetland,* 2004 WL 287123 at *1 (D.C. Cir. 2004) .....................................24

*U.S. ex. rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 856 (10th Cir. 2005) ...............23

*United States v. Thirty-Five Firearms*, 123 Fed.Appx. 204, 207 (6th Cir. 2005) ...........22

*Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ..........................................................13

*Verosol v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 594 (E.D. Va. 1992) .....................18

*Wachtel v. Storm*, 796 F. Supp. 114, 116 (S.D.N.Y. 1992) ...........................................9

*Warrick*, 70 F.3d 736, 740 (2d Cir. 1995) ...............................................................14,16

## STATUTES:

18 U.S.C. § 1664(a) ....................................................................................2,20

18 U.S.C. § 1964 (c) ...................................................................................2,20

18 U.S.C. § 1965...........................................................................................5,11

18 U.S.C. § 1965(a) ...................................................................................11,12

18 U.S.C. § 1965(b) ...................................................................................*passim*

28 U.S.C. § 1331 ............................................................................................2,20

28 U.S.C. § 1367 ..............................................................................................20

28 U.S.C. § 1391 .......................................................................................*passim*

28 U.S.C. § 1391(b) ..................................................................................*passim*

28 U.S.C. § 1391(b)(1) .............................................................................6,17,20

28 U.S.C. § 1391(b)(2) ..............................................................................*passim*

28 U.S.C. § 1404(a) .....................................................................................13,17

28 U.S.C. § 1406(a) ...................................................................................*passim*

DC Stat. § 12-301 ..............................................................................................19

Fed. R. Civ. Proc. 12(f).....................................................................................22

 Fed. R. Civ. Proc. 55 ...............................................................................2,23,25

Fed. R. Civ. Proc. 6(a) .....................................................................................22

Maryland Code § 5-101 ....................................................................................19

## TREATISE

Moore's Federal Practice, § 110.01 .................................................................6

15 Wright, Miller & Cooper, Federal Practice and Procedure § 3804
(2d ed. Supp. 1999) ………………………………………………………… 6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| BIJAN MODARESSI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MOLOOK VEDADI; | ) | |
| MORTEZA MODARESSI, | ) | |
| Also known as MORY MODARESSI; | ) | |
| MOJO PROJECTS, LLC, | ) | Court No. 05 Civ. 2424 (JDB) |
| Operating as SALON RED; | ) | |
| MOJO REALTY, LLC; | ) | |
| MOJO PROPERTIES, LLC; | ) | |
| YOSEF ASSEFA; | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

**PLAINTIFF'S OPPOSITION TO THE RICO DEFENDANTS'**
**MOTION TO DISMISS FOR IMPROPER VENUE, AND PLAINTIFF'S**
**MOTION TO STRIKE THE RICO DEFENDANTS' MOTION TO DISMISS AND**
**APPLICATION FOR ENTRY OF DEFAULT AGAINST THE RICO DEFENDANTS**

Pursuant to Rules 6, 12(f), and 55(a) of the Federal Rules of Civil Procedure and Local

Civil Rule 7, plaintiff, Bijan Modaressi, respectfully requests the Court to deny the motion to

dismiss for improper venue filed by defendants Molook Vedadi, Morteza Modaressi, Mojo

Properties, LLC, Mojo Projects, LLC, and Mojo Realty, LLC (collectively, "the RICO

defendants").  Plaintiff further respectfully requests the Court to strike the belated motion filed

by the RICO defendants without leave of Court and in direct violation of the Court's January 5,

2006 Order, and hereby submits an application to enter the RICO defendants' default in this case

for their inexcusable failure to timely respond to the complaint and the resulting prejudice to

plaintiff.[1]  Upon entry of default, plaintiff is prepared to submit evidence to the Court to prove

the claims asserted against the RICO defendants in plaintiff's complaint and to obtain a judgment

by default against them pursuant to Federal Rule of Civil Procedure 55(b)(2).  Should the Court

deny plaintiff's motion to strike and application for entry of default, and should the Court

determine that venue is improper in this Court, plaintiff respectfully requests the Court to

transfer this action to the District Court for the District of Maryland, Baltimore Division,

pursuant to the venue transfer provision set forth in 28 U.S.C. § 1406(a).

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE RICO DEFENDANTS' MOTION TO DISMISS, AND PLAINTIFF'S MOTION TO STRIKE AND APPLICATION FOR ENTRY OF DEFAULT AGAINST THE RICO DEFENDANTS

### BACKGROUND

Plaintiff filed this complaint against the RICO defendants alleging violation of civil

RICO, 18 U.S.C. § 1964(c), as a result of their money laundering activities and embezzlement of

assets from Chelsea's, a business operating in the District of Columbia from 1982 to 2000.  The

racketeering activity alleged in the complaint consisted of repeated acts of money laundering,

wire fraud, mail fraud, interstate transportation of stolen property, embezzlement from interstate

shipment, engaging in monetary transactions in property derived from unlawful activity, and acts

indictable under the Currency and Foreign Transactions Reporting Act (Compl. ¶ 65), all of

which arose from a scheme and pattern of embezzlement from a business located in, subject to

the taxes, and organized under the laws of the District of Columbia.  The complaint further

contained common law counts against the RICO defendants for conversion, fraudulent

misrepresentation, breach of fiduciary duty, interference with contractual relations, unjust

---

[1] On January 20, 2006, plaintiff's counsel contacted Todd Forster, the RICO defendants' counsel, who declined to consent to plaintiff's motion to strike and application for entry of default. Plaintiff has thus satisfied his meet and confer requirement pursuant to Local Civil Rule 7(m).

enrichment, fraudulent transfer, and intentional infliction of emotion distress.  Compl., ¶¶ 85-129.  The common law counts arose from the RICO defendants' embezzlement of funds from plaintiff's Georgetown restaurant-nightclub, Chelsea's.

In his complaint, plaintiff asserted that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because:

> the funds at issue were embezzled from Chelsea's, a business located and organized under the laws of the District of Columbia; the funds were transported interstate from the District of Columbia to Maryland and elsewhere; because at all relevant times, Molook Vedadi was plaintiff's trustee appointed to deposit in trust funds generated from Chelsea's for plaintiff's benefit; defendants Vedadi and Modaressi used a money carrier based in the District of Columbia to launder embezzled funds to bank accounts in Iran; and because Morteza Modaressi was a head bartender at Chelsea's for approximately two years and lived in the District of Columbia.  Compl., ¶ 7.

The complaint then enumerated numerous violations that either originated from or directly took place in the District of Columbia.  These included the following:  during his employment as a head bartender at Chelsea's and while he was residing in the District of Columbia from 1986-1988, defendant Modaressi engaged in a scheme to defraud plaintiff of revenues from the sale of liquor at Chelsea's by offering "free drinks" to patrons in exchange for large tips (approximately $50 per person) collected by defendant Modaressi for his sole benefit (Compl. ¶ 19); defendant Modaressi involved Chelsea's waitresses in furtherance of his "free drinks" scheme, which consisted of repeated acts of embezzlement in the District of Columbia for a period of two years (*id.*); during her position as plaintiff's trustee and fiduciary from 1997-2000, defendant Vedadi telephonically instructed Chelsea's employees to deliver to her from the District of Columbia large cash envelopes containing Chelsea's profits and subsequently

embezzled over $225,000 of these funds[2] (Compl. ¶¶ 25-27); defendant Vedadi transported

funds embezzled from Chelsea's to a money carrier in the District of Columbia whence she

laundered the funds to bank accounts in the Islamic Republic of Iran ("Iran") without notifying

the United States government of the offshore transfer (Compl. ¶¶ 30-31); defendant Modaressi

assisted defendant Vedadi in laundering funds embezzled from Chelsea's to bank accounts in

Iran by

(a) identifying a money carrier in the District of Columbia to arrange for the laundering of funds

embezzled from Chelsea's, (b) transporting defendant Vedadi and the embezzled funds to the

money carrier in the District of Columbia, and (c) making telephone calls or sending faxes to and

from the money carrier in the District of Columbia to arrange for the transfer of the embezzled

funds to offshore accounts (Compl. ¶¶ 30-32).

        The complaint further alleged that the RICO defendants' omissions and violations led to

the dissolution of Chelsea's and the seizure of its assets by the District of Columbia (Compl. ¶¶

51-52), precluded plaintiff from fulfilling his tax obligations to the District of Columbia (Compl.

¶ 54), resulted in the District of Columbia's enforcing a tax lien against plaintiff's house (Compl.

¶ 53), and interfered with the implied contractual relations between Chelsea's and its patrons

who regularly visited Chelsea's in the District of Columbia (Compl. ¶¶ 114-120). The complaint

therefore clearly indicated that a substantial part of the violations and operative facts giving rise

to plaintiff's claims occurred in the District of Columbia.[3]

---

[2]  The $225,000 figure does not include the rental proceeds derived from five properties (three in
Maryland and two in Florida) purchased by the RICO defendants with embezzled funds. Nor
does it include the capital appreciation of the properties purchased with embezzled assets as well
as the interest accrued on the certificates of deposit purchased in Iran.
[3]  In addition to the above, the complaint alleged numerous violations that originated from the
RICO defendants' embezzlement of funds from Chelsea's, a District of Columbia establishment:
defendant Modaressi used funds embezzled from Chelsea's through his "free" drinks scheme to

With respect to the corporate defendants, Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC, the complaint alleged that they were "owned and controlled" by defendant Modaressi and created by him to conceal embezzled assets through their investment in real estate and legitimate businesses.  Compl. ¶¶ 11-13, 45-48.  The complaint thus essentially alleged that the corporate defendants were alter-egos of defendant Modaressi because they were created by him to conceal his unlawful activities and moneys he had embezzled from Chelsea's.

As demonstrated below, the RICO defendants' motion to dismiss for improper venue should be denied because a substantial part of the violations giving rise to plaintiff's claims occurred in the District of Columbia—where Chelsea's was operating for eighteen years—and because plaintiff is free to select the venue when alternative venues are proper in a given case under 28 U.S.C. § 1391(b).  As further demonstrated below, RICO's specific venue provision, 18 U.S.C. § 1965, and the forum *non conveniens* factors enumerated in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947), militate against dismissal of this action upon the basis of improper venue.

## ARGUMENT

### I.  Venue Is Proper In The District Of Columbia Pursuant To 28 U.S.C. § 1391(b)(2) Because A Substantial Part Of The Events Giving Rise To Plaintiff's Claims Occurred In The District Of Columbia Where Chelsea's Was Operating For Eighteen Years

The RICO defendants seek to dismiss this action upon the basis of improper venue because all currently known defendants reside in the State of Maryland.  The RICO defendants' motion to dismiss thus rests upon the premise that, when all defendants reside in the same state, a

---

make a down payment on a hair salon in Maryland (Compl. ¶ 43); defendants Vedadi and Modaressi used funds embezzled from Chelsea's to purchase properties in Maryland (Compl. ¶¶ 9-13), and in Florida (*see* Affidavit of Koorosh Dehghan, Exs. A, B); and defendant Modaressi used funds embezzled from Chlesea's to purchase a commercial townhouse in Maryland and to build a hair salon therein (Compl. ¶¶ 37-44).  These acts were incidental to the underlying violations that occurred in the District of Columbia.

plaintiff is required to file his action in that state even if the operative events giving rise to the plaintiff's claims occurred in a different state. *See* Defs.' Mot. to Dismiss, at 6-8. However, as demonstrated below, this legal premise is simply incorrect. The RICO defendants' remaining arguments become irrelevant in the absence of this erroneous legal premise and their motion should thus be denied.

Section 1391 governs selection of venue in civil actions. 28 U.S.C. § 1391. Subsection (b) provides that in civil actions where jurisdiction is not founded solely upon diversity, such as a federal question case, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). The express language of the venue statute, which uses the word "or" in stating where an action may be filed, thus indicates that alternative proper venues may exist in a given case. The instant case is one in which alternative proper venues exist under section 1391(b)(1) and (b)(2) because all currently known defendants reside in Maryland but a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the District of Columbia. Further, plaintiff resides in California and all the non-party witnesses identified by plaintiff (*see, infra*, at 15-16) reside *outside of Maryland*. Consequently, venue is proper in both the District of Columbia and Maryland.

When alternative proper venues exist, as in this case, plaintiff is free to choose the venue in which to file his action. As explained in *Moore's Federal Practice*, "venue could be proper where a substantial part of the events or omissions giving rise to the claim occurred, regardless of whether venue based on the defendant's residence could be satisfied in another forum. . . .

[W]hen more than one proper venue is available under the applicable venue statute, the plaintiff is entitled to choose the location in which to file." MOORE'S FEDERAL PRACTICE, § 110.01[4], at 110-17, 110-44, 110-45. *See I.M.D. USA, Inc. v. Shalit*, 92 F. Supp.2d 315, 316-18 (S.D.N.Y. 2000) (determination that sole defendant resided in South Carolina did not mandate that case be filed in that district); *Hall v. South Orange*, 89 F. Supp.2d 488, 491-93 (S.D.N.Y. 2000) ("The statute clearly provides two possibilities for an appropriate venue. If Congress had intended to make [section 1391] (b)(2) available only if (b)(1) could not be satisfied, presumably language indicating this limitation would have been included in the statute. It was not."); *Market Transition Facility v. Twena*, 941 F. Supp. 462, 465 (D.N.J 1996) ("the plain language of section 1391(a) indicates that venue . . . is proper, regardless of the circumstances, in either a district within the state where all defendants reside or in a district where a substantial part of the events or omissions giving rise to the claim occurred. There is nothing on the face of the statute to support the interpretation that venue must be in a district where a defendant resides, when all defendants reside in the same state."); *see also* 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3804, at 16 (2d ed. Supp. 1999) ("The provision for residential venue, in paragraph (1) of subdivisions (a) and (b), and the provision for transactional venue in paragraph (2) of those subdivisions, are in the alternative. Venue is proper if either one of those conditions is met.").

Although the RICO defendants claim that "plaintiff's complaint contains one articulation that venue is proper in the District of Columbia. . . .  because the alleged embezzlement was from an establishment located in the District of Columbia," (Defs.' Mot. to Dismiss, at 5), plaintiff's complaint describes with detail *the various violations* committed by the RICO defendants in the District of Columbia. For the purpose of a 12(b) motion to dismiss, the allegations raised by

plaintiff in his complaint must be assumed to be true.  *See Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 70 (D.D.C. 1992) ("Facts asserted by plaintiff in his complaint are presumed to be true unless directly contradicted by affidavit").  The RICO defendants have not presented any evidence to contest the allegations raised by plaintiff in his complaint concerning the acts and omissions committed by defendants Vedadi and Modaressi in the District of Columbia and the allegation that the Mojo defendants are alter-egos of defendant Modaressi.  Consequently, in resolving the instant motion to dismiss, the Court must assume the veracity of the allegations raised by plaintiff in his complaint.

These allegations are as follows:  in a series of unlawful acts occurring during several years, the RICO defendants embezzled substantial funds from Chelsea's, a business operating in the District of Columbia (Compl. ¶¶ 1, 19-28); during his employment as a bartender at Chelsea's and while he was residing in the District of Columbia from 1986-1988, defendant Modaressi engaged in a scheme to defraud plaintiff of revenues from the sale of liquor at Chelsea's by offering "free" drinks to patrons in exchange for large tips (Compl. ¶ 19); defendant Modaressi involved Chelsea's waitresses in furtherance of his "free" drinks scheme, which consisted of repeated acts of embezzlement in the District of Columbia for two years (*id.*); during her position as plaintiff's trustee and fiduciary from 1997-2000, defendant Vedadi telephonically instructed Chelsea's employees to deliver to her from the District of Columbia large cash envelopes containing Chelsea's profits and embezzled over $225,000 of these funds (Compl. ¶¶ 25-27); defendant Vedadi transported funds embezzled from Chelsea's to a money carrier in the District of Columbia whence she laundered the funds to bank accounts in Iran (Compl. ¶¶ 30-31); defendant Modaressi assisted defendant Vedadi in laundering the funds embezzled from Chelsea's to bank accounts in Iran by transporting defendant Vedadi and the embezzled funds to

the money carrier in the District of Columbia (Compl. ¶¶ 30-32); and, the RICO defendants'

omissions and violations led to the dissolution of Chelsea's and the seizure of its assets by the

District of Columbia (Compl. ¶¶ 51-52), precluded plaintiff from fulfilling his tax obligations to

the District of Columbia (Compl. ¶ 54), resulted in the District of Columbia's enforcing a tax

lien against plaintiff's house (Compl. ¶ 53), and interfered with the implied contractual

relationship between Chelsea's and its patrons who regularly visited Chelsea's in the District of

Columbia (Compl. ¶¶ 114-120).  The complaint further alleged that the Mojo defendants are

"owned and controlled" by defendant Modaressi, and are thus his alter-egos, because they were

created by him solely for the purpose of concealing embezzled funds in legitimate businesses.

These allegations are clearly sufficient to establish that a substantial part of the events

giving rise to plaintiff's claims occurred in the District of Columbia, making this Court the

proper venue for this action pursuant to section 1391(b)(2).  *See First of Michigan Corp. v.*

*Bramlet*, 141 F.3d 260, 261-64 (6th Cir. 1998) (a meeting between the parties in Michigan to

discuss investment options constituted a "substantial part of the events" giving rise to plaintiff's

claim, even though the plaintiff's suit sought to enjoin an arbitration action initiated by

defendants in Florida); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867-68 (2d Cir. 1992)

(plaintiff's receipt of a collection notice forwarded to his new address in New York constituted

"a substantial part of the events" giving rise to his claim for violation of the Fair Debt Collection

Practices Act even though the debt was incurred in Pennsylvania); *Wachtel v. Storm*, 796 F.

Supp. 114, 116 (S.D.N.Y. 1992) (mailing of defamatory letter to plaintiff in New York rendered

district the proper venue); *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp.2d 1173, 1181 (D.Kan.

1998) (a substantial part of the events giving rise to plaintiff's claim occurred in Kansas because

the "negotiation and execution of the contract [] took place by way of communications directed

into Kansas" and the alleged breach occurred when defendant "terminated the contract in a telephone call with plaintiff in Kansas"); *Seneca Ins. Co. v. Commercial Trans., Inc.*, 906 F. Supp. 239, 241 (M.D. Penn. 1995) (a substantial part of the events giving rise to plaintiff's claim occurred in the Middle District of Pennsylvania in an insurance company's civil RICO action against trucking company because defendants' misrepresentations made to secure lower premiums on policies were made in Pennsylvania); *Ideal Stencil Machine & Tape Co. v. Merchiori*, 600 F. Supp. 185, 190 (S.D.Ill. 1985) (venue was proper in the Southern District of Illinois where civil RICO action was filed because defendants' solicitation of plaintiff's business and the non-payment of the orders occurred in Illinois); *accord Leroy v. Great Western United Corp.*, 443 U.S. 173, 185 (when "it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that . . . may be assigned as the locus of the claim").

That some of the events giving rise to plaintiff's claims—notably, the purchase of real estate with embezzled funds—occurred in Maryland does not render the District of Columbia an improper venue, because venue is proper in the district where a substantial part of the events giving rise to plaintiff's claim occurred even if some of the events occurred elsewhere. *See Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) ("Under the amended statute, we no longer ask which district court among two or more potential forums is the 'best' venue . . . . Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts"); *Bates*, 980 F.2d at 867 ("the new statute does not . . . require the District Court to determine the best venue"); *Merchants Nat'l Bank v. Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991) (it is not necessary for a case to be filed in the

district where all the defendants reside or where most of the acts occurred if the venue selected is one in which a substantial part of the acts occurred).

Further, two of the properties subject to *lis pendens* in this case are located in Palm Beach County, Florida. *See* Affidavit of Koorosh Dehghan, Exs. A, B. Plaintiff is currently attempting to ascertain the location of additional properties that may have been purchased, renovated, or refinanced by the RICO defendants using funds embezzled from plaintiff and Chelsea's. These properties could be located in California and elsewhere in the United States. Indeed, not all of the properties subject to this action are located in Maryland.

Ultimately, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the RICO defendants embezzled substantial sums of money from Chelsea's, a restaurant operating in the District of Columbia for 18 years. This, in itself, is sufficient to render the District of Columbia the proper venue in this case. The RICO defendants' contention that the alleged conversion occurred upon the defendants' taking possession of plaintiff's funds in Maryland lacks merit because the complaint specifically alleges that defendant Modaressi embezzled funds from Chelsea's during his employment there. In any event, the RICO defendants have merely identified a single cause of action in plaintiff's complaint. The determination of venue, however, must be based upon the totality of claims raised in plaintiff's complaint, including his claim for interference with contractual relations which relates to actions that occurred in and had a substantial impact upon the District of Columbia.

## II.    RICO's Specific Venue Provision, 18 U.S.C. § 1965, Supplements Section 1391(b), And Venue Is Proper In The District Of Columbia Under 18 U.S.C. § 1965(b)

Recognizing that venue is proper in this Court under section 1391(b)(2), the RICO defendants attempt to confuse the issue by suggesting that RICO's specific venue provision, 18 U.S.C. § 1965, is exclusive. *See* Defs.' Mot. to Dismiss, at 8 ("[T]his litigation arises out of

claims based on the RICO statutes. As such, the venue provisions set forth in 18 U.S.C. § 1965 apply and the locale of the injuries is not the proper district of venue where all defendants reside in other districts."). The RICO defendants' contention, however, is unsupported by the express language of section 1965 and contrary to precedent. Section 1965(a) provides that "[a]ny civil action or proceeding under this chapter against any person *may be instituted* in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a) (emphasis added). The phrase "may be instituted" clearly indicates that Congress did not intend for RICO's specific venue provision to be exclusive. Had Congress intended to render section 1965 the exclusive venue provision in civil RICO actions, it would have used the words "shall be instituted" or "must be instituted" in section 1965(a). However, Congress did not do so. The RICO defendants' attempt to contravene the intent of Congress by imposing statutory requirements for venue that do not exist should be rejected by this Court.

Clearly, RICO's specific venue provision is not exclusive and was intended to supplement the general venue provision found in 28 U.S.C. § 1391(b). *See Monarch Normandy Square Partners v. Normandy Square Associates, Ltd.*, 817 F. Supp. 899, 904 (D.Kan. 1993) ("The venue provisions of RICO supplement the provisions of § 1391(b)); *Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1291 (D.Wisc. 1985); *Farmers Bank of the State of Del. v. Bell Mortgage Corp.*, 452 F. Supp. 1278 (D.Del. 1978) (concluding that the express language and legislative history of section 1965 indicate that "its venue provisions were not intended to be exclusive, but rather, were intended to liberalize the already existent venue provisions found in Title 28"). Further, as demonstrated above, venue is proper in this case in the District of Columbia under section 1391(b)(2) because a substantial part of the events giving rise to

plaintiff's claims occurred in the District of Columbia (*see supra*, at 3-4, 7-8).  Consequently, the RICO defendants' contention that venue is improper in the District of Columbia because all currently known defendants reside in Maryland is without merit.

In *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992), this Court found that jurisdiction and venue were proper in the District of Columbia where a significant part of the alleged RICO scheme involving bribery of Saudi government officials took place even though the individual and corporate defendants were citizens of Delaware and Connecticut, none were residents of the District of Columbia, and a substantial part of the events giving rise to the plaintiff's claim occurred in Connecticut.  *Id.* at 70-81.  The Court denied the defendants' motion to transfer the action to Connecticut, noting that the District of Columbia was "plaintiff's chosen forum," in close proximity to counsel for all the parties, and would not cause substantial hardship to the defendants.  *Id.* at 82.  This Court should similarly find that the District of Columbia is a proper venue in which to try this action.

Moreover, venue is proper in the District of Columbia under section 1965(b), because (1) a substantial part of the RICO violations committed by defendant Modaressi took place in the District of Columbia (*see supra*, at 3-4, 7-8), (2) defendant Modaressi created Mojo Projects, LLC, Mojo Properties, LLC, and Mojo Realty, LLC, for the sole purpose of concealing the fruits of his embezzlement scheme, (3) defendant Vedadi engaged in money laundering in the District of Columbia and directed her telephonic demands for receipt of payments to the District of Columbia, and (4) defendant Modaressi conspired with and aided defendant Vedadi in committing the RICO violations alleged in plaintiff's complaint.  Under these circumstances, venue is proper in the District of Columbia as to defendants Modaressi and Vedadi pursuant to 19 U.S.C. § 1965(a), and it is therefore appropriate for this Court to bring defendant Modaressi's

alter-ego corporations (the Mojo entities) before this Court in the interests of justice pursuant to 19 U.S.C. § 1965(b). *See Monarch Partners*, 817 F. Supp. at 905 (Section 1965(b) "was intended to enable a plaintiff to bring before a single court for trial all members of a nationwide RICO conspiracy"); *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 490-92 (D.Del. 1991) (venue was proper in Delaware as to non-resident RICO defendants when they created a Delaware corporation to unlawfully takeover other businesses and mask their affiliations with organized crime); *Bridge v. Invest America, Inc.*, 748 F. Supp. 948, 953 (D.R.I. 1990) (the ends of justice required that non-resident defendant be brought before the court in civil RICO action in order to litigate the entire case in one forum).

The RICO defendants' reliance upon *First Financial Leasing Corp. v. Harge*, 671 F. Supp. 538 (N.D. Ill. 1987) and *Crenshaw v. Antokol*, 287 F. Supp.2d 37 (D.D.C. 2003), for the proposition that in a civil RICO case, "the place of injury is not determinative of venue" (Defs.' Mot. to Dismiss, at 6), is misplaced. *Harge* was decided under the more restrictive venue provisions in effect prior to the 1990 amendment of 28 U.S.C. § 1391. In *Harge*, the court found that the claim did not arise in Illinois because the operative events took place in Missouri and that venue was more convenient in Missouri, justifying a transfer. *Harge*, 671 F. Supp. at 542-44. As demonstrated below, however, in this case venue is more convenient for the witnesses and the parties in the District of Columbia than Baltimore. *Crenshaw* is likewise distinguishable. *Crenshaw* concerned an attorney's action against her opposing counsels in prior litigation for bad faith in instituting disciplinary proceedings. The court transferred the action to Indiana because all events giving rise to the attorney's claim occurred in Indiana, both plaintiff and defendants resided in Indiana, and the ends of justice did not require that venue be in the District of Columbia. *Crenshaw*, 287 F. Supp.2d at 43-45. Here, in contrast, a substantial part of the events

giving rise to plaintiff's claims occurred in the District of Columbia and, as discussed below, trying this action in Baltimore rather than this Court would be more inconvenient to all the parties and witnesses, result in further delay in the progress of this litigation, and consequent prejudice to plaintiff.  *See* Affidavit of Marvin Osman.

## III.    The Forum *Non Conveniens* Factors Enumerated In *Gulf Oil Co.* Weigh Heavily In Favor Of Maintaining This Action In The District Of Columbia

The doctrine of forum *non conveniens* empowers a district court to transfer an action filed in a proper venue to another venue in which the action could have originally been brought "for the convenience of the parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).  In order for venue to be transferred, the transferee court must be the proper venue and have both subject matter jurisdiction and personal jurisdiction over the defendants.  *See Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Packer v. Kaiser Foundation Health Plan*, 728 F. Supp. 8, 11 (D.D.C. 1989).  Although the doctrine of forum *non conveniens* is ordinarily applicable to venue transfer motions, the criteria used by courts in determining whether venue should be transferred is pertinent to the Court's determination of whether this action should be tried in the District of Columbia.

In *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947) (superseded by statute), the Supreme Court laid out fourteen factors that should be considered in determining whether a case should be dismissed upon the basis of forum *non conveniens*.  The same factors are now used by courts to determine whether venue should be transferred for convenience pursuant to section 1404(a).  *See Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383 (W.D. La. 1996); *accord Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  These factors include:  (1) the plaintiff's original choice of forum, (2) where the operative events took place, (3) the convenience of the parties, (4) the convenience of the witnesses, (5) the

15

comparative availability of compulsory process to compel the attendance of unwilling witnesses, (6) the location of the physical evidence, (7) the enforceability of the judgment, (8) in which forum the case can be tried more inexpensively and expeditiously, (9) the relative court congestion in the two forums, (10) the public interest in local adjudication of local controversies, (11) the relative familiarity of the courts with the applicable law, (12) whether transfer is in the "interest of justice," (13) which forum would better serve judicial economy, and (14) the existence of a contractual forum selection clause. *Gulf Oil Co.*, 330 U.S. 508.

Of these, the two most important factors are plaintiff's original choice of forum and the convenience of witnesses. Indeed, courts have repeatedly held that a plaintiff's choice of forum is of "paramount" concern and should rarely be disturbed unless the other factors weigh heavily in favor of transfer. *See, e.g., Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971) ("a plaintiff's choice of a proper forum is a paramount consideration"); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) ("courts normally defer to a plaintiff's choice of forum"); *In re Warrick*, 70 F.3d 736, 740 (2d Cir. 1995) (plaintiff's choice of forum is "entitled to substantial consideration"); *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1162 (5th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987) ("plaintiff's choice of forum should rarely be disturbed"). Courts have also held that the convenience of non-party witnesses is the single most important factor in determining whether venue should be transferred on the basis of forum *non conveniens*. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991); *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (the relative convenience of witnesses is "the most important factor").

As demonstrated below, consideration of the *Gulf Oil Co.* factors weighs heavily in favor of maintaining this action in the District of Columbia. This is an action for civil RICO and common law violations arising from defendants' embezzlement of funds from Chelsea's. Plaintiff brought this action in the District of Columbia because a substantial part of the operative events occurred in the District of Columbia where Chelsea's was operating for 18 years. Plaintiff's selection of the District of Columbia as the venue in this action should not be disturbed. *See Shutte*, 431 F.2d at 25; *Schexnider*, 817 F.2d at 1162. This is particularly so because a great deal of the violations giving rise to plaintiff's claims took place in the District of Columbia. *See supra*, at 3-4.

Further, the District of Columbia is more convenient than Maryland to the non-party witnesses in this case, many of whom reside and work closer to this Court than Baltimore, where the District Court for the District of Maryland is located. Plaintiff has identified several non-party witnesses, including Ahmad Alasti, Laura Carrano, Reza Ghazamfari, Roberta Mahinpour, Mehri Modaressi, Martha Munjo, Marvin Osman, Harold Pike, and Mr. Shirazi, all of whom reside outside Maryland. Mr. Alasti resides in California. Mr. Ghazamfari, who aided the RICO defendants in transferring funds offshore, resides outside Maryland. Ms. Carrano, a former employee of Chelsea's responsible for a variety of corporate functions, resides in Virginia. Ms. Mahinpour, a former employee in charge of Chelsea's internal accounting and payroll, resides in Virginia. Ms. Modaressi, plaintiff's ex-wife and a fact witness concerning the events giving rise to this lawsuit, resides in California. Ms. Munjo, a night-shift employee at Chelsea's, resides in South Carolina. Dr. Osman, plaintiff's psychiatrist and a significant fact witness in this case, resides in California. Mr. Pike, Chelsea's assistant manager, apparently

17

resides in Florida. Mr. Shirazi, the money carrier used by the defendants to transfer funds

offshore, had his offices in the District of Columbia and apparently resides in Virginia.

Surprisingly, although the RICO defendants seek to have this case transferred to

Maryland, the distance from the RICO defendants' place of residence *is substantially closer to*

*this Court than Baltimore*, where the District Court for the District of Maryland is located.

Defendant Vedadi resides in Bethesda, Maryland, approximately 18 miles from this Court and 40

miles from the District Court in Baltimore. Defendants Modaressi, Mojo Properties, LLC, Mojo

Projects, LLC, and Mojo Realty, LLC, reside or have their place of business in Gaithersburg,

Maryland, approximately 27 miles from this Court and 48 miles from the District Court in

Baltimore. The costs of litigation would increase for all parties if this case were tried in

Baltimore, as counsels' offices are in greater proximity to this Court than to the District Court in

Baltimore. In addition, plaintiff resides in Los Angles and has indicated that trying this case in

the District of Columbia (where his contacts remain) is more convenient for him than Baltimore.

This action should therefore be litigated in the District of Columbia for the convenience of both

the witnesses and the parties. *See In re Warrick*, 70 F.3d 736, 740-41 (2d Cir. 1995) (reversing

transfer order); *Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y.

1995) (denying motion to transfer). *See also Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 170

(S.D. Tex. 1995) (denying motion to transfer when proposed transferee district was only 50

miles from transferor district); *Landau*, 616 F. Supp. at 1291 (denying motion to transfer venue

due to additional delay that would ensue and consequent prejudice to plaintiff in civil RICO

action).

The other *Gulf Oil Co.* factors similarly weigh in favor of litigating this action in the

District of Columbia. Counsel is informed that at least one uncooperative witness is located in

the District of Columbia subject to the subpoena power of this Court. Some of the documentary evidence from Chelsea's is also located in the District of Columbia. Nor is there any advantage to transferring this action to Maryland for the purpose of enforcing the Court's judgment because a judgment issued by a federal court is enforceable in the entire United States. *See Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989). Plaintiff submits that this action could be tried more expeditiously and inexpensively in the District of Columbia because the Court is closer to the parties, the witnesses, and the attorneys than the District Court in Baltimore.

The District of Columbia further has an interest in the local adjudication of this controversy which arises from defendants' embezzlement of funds from Chelsea's, a District of Columbia business. *See Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 532 (S.D.N.Y. 1997) (the public interest favored maintenance of civil RICO class action in New York because the defendant's conduct impacted New York residents). This is particularly so because plaintiff has alleged that the RICO defendants' embezzlement of funds from Chelsea's was the proximate cause of the dissolution of Chelsea's and its inability to timely pay its sales tax to the District of Columbia. *See Gulf Oil Co.*, 330 U.S. at 511; *In re Eastern Dist. Repetitive Stress Injury Lit.*, 850 F. Supp. 188, 195 (E.D.N.Y. 1994) ("the public interest supports adjudication of the controversy in that locale, rather than in a remote location where it will be learned of only by report"). The interests of justice would also be best served by maintaining this action in the District of Columbia to the extent the statute of limitations may bar plaintiff from pursuing some of his common law claims in Maryland if this case were to be dismissed upon the basis of improper venue.

19

**IV.    Should The Court Determine That The District Of Columbia Is An Improper Venue In This Case, Plaintiff Insists That The Court Transfer This Action To The District Court For The District of Maryland Pursuant To 28 U.S.C. § 1406(a)**

In the event the Court determines that the District of Columbia is an improper venue in this case, plaintiff respectfully requests the Court to transfer this action to the District Court for the District of Maryland, Baltimore Division, where this action could have originally been brought under 28 U.S.C. § 1391(b)(1). The improper venue transfer statute, 28 U.S.C. § 1406(a), empowers this Court to transfer a case to another district in which "it could have been brought" if the transfer is "in the interest of justice." *See Rumsfeld v. Padilla*, 542 U.S. 426, 464 n.7 (2005) (if venue is inconvenient or improper, the district court "of course has the authority to transfer"). The Supreme Court has held that when venue is improper in the district in which plaintiff filed the action, the appropriate remedy is not to dismiss the case but to transfer it to the venue in which it could have been brought. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Indeed, the very purpose of enactment of section 1406(a) was to "avoid the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Id.* at 466.

The transfer of an action filed in the wrong venue is "in the interest of justice" because of the cost and delay associated with re-filing the action in the proper venue and because of the injustice that would ensue if dismissal resulted in expiration of the applicable statute of limitations. *See Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 430 (1965) (section 1406(a) prevents "the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run"). The

20

Court of Appeals for the District of Columbia Circuit has expressly stated that transfer is the
appropriate remedy in a case where venue is improper. *See Sinclair v. Kleindienst*, 711 F.2d
291, 294 (D.C. Cir. 1983) ("Transfer is particularly appropriate where, as here, without a transfer
a cause of action would be barred by the running of the applicable statute of limitations");
*Crenshaw v. Antokol*, 287 F. Supp.2d 37, 42 (D.D.C. 2003); *accord Verosol v. Hunter Douglas,
Inc.*, 806 F. Supp. 582, 594 (E.D. Va. 1992) (transfer was in the interest of justice to avoid the
cost and delay that associated with dismissal and re-filing). Transfer is therefore the appropriate
remedy even if the motion contesting venue seeks dismissal only, as the RICO defendants'
motion in this case. *See Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989).

Plaintiff filed this action in December 2005 in this Court, well within the period of
limitations for both the RICO claims and the common law claims under District of Columbia and
Maryland law. If the Court were to dismiss this action upon the basis of improper venue, instead
of transferring it to the District Court for the District of Maryland, plaintiff's common law claims
may be time-barred under both District of Columbia and Maryland law because plaintiff first
learned of certain limited aspects of the RICO defendants' embezzlement scheme in January
2003.[4] Plaintiff's Compl. ¶ 27; *See* DC Stat. § 12-301 (limitations period for fraud is three years
from the date of discovery of fraud and same for actions for which a limitations period is not
specifically prescribed, including conversion); Maryland Code § 5-101 (limitations period for
civil actions for which a specific period is not prescribed, including conversion and fraud, is the
later of three years from the date the action accrues or the facts giving rise to the claim were first

---

[4] The precise scope of the disclosures made by defendant Modaressi to plaintiff in his January
2003 telephone conversation and whether such disclosures were sufficient to place plaintiff on
notice of the entire embezzlement scheme at that time are unclear. Plaintiff expressly reserves
the right to challenge any statute of limitations affirmative defenses raised by defendants in this
case and in any related actions.

discovered); *College of Norte Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 752 A.2d

265, 271 (Md.Ct.App. 2000).  Dismissal of this action upon the basis of improper venue would

thus result in injustice and curtail the legislative purpose behind enactment of 28 U.S.C.

§ 1406(a).  *See Goldlawr, Inc.*, 369 U.S. at 466; *Burnett*, 380 U.S. at 430; *Sinclair*, 711 F.2d at

294; *Crenshaw*, 671 F. Supp. at 543.

Further, dismissal of this action, instead of its transfer to the District Court in Baltimore,

would result in further delay in adjudication of the merits of plaintiff's claims and increased

expense associated with re-filing the action—including filing fees, fees associated with service

of process, and additional attorney time.  Delay is extremely prejudicial to plaintiff due to his

deteriorating psychological condition.  *See* Affidavit of Marin Osman, M.D.  Plaintiff has

already incurred tens of thousands of dollars to file this action to hail the RICO defendants in

court for their embezzlement scheme and stern refusal to return plaintiff's moneys.  All

defendants were promptly served by hand with the summons and complaint in this case, and

there is no reason to serve process on them once again.

The RICO defendants concede that the District Court for the District of Maryland is a

venue in which this action originally could have been brought under 28 U.S.C. § 1391(b)(1)

because all known defendants in this case currently reside in Maryland.  *See* Defs.' Mot. to

Dismiss, at 6 ("plaintiff could have brought the action in Maryland").  Further, the District Court

for the District of Maryland possesses subject matter jurisdiction in this case pursuant to 28

U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction), and

18 U.S.C. § 1664(a) and (c) (RICO jurisdiction).  The District Court for the District of Maryland

further possesses personal jurisdiction over defendants because they reside in or are incorporated

in Maryland and because the civil RICO statute provides the District Court for the District of

Maryland with nationwide personal jurisdiction. *See Gatz v. Ponsoldt*, 271 F. Supp.2d 1143, 1152-54 (D.Neb. 2003) (RICO confers nationwide service of process); *Dooley*, 786 F. Supp. at 71 (under section 1965, "[m]inumum contacts with the forum state, as required under the traditional long-arm jurisdiction analysis, is not necessary"); *Ideal Stencil Machine & Tape Co. v. Merchiori*, 600 F. Supp. 185, 190 (D.Ill 1985). Further, although this Court possesses personal jurisdiction over the RICO defendants, the absence of personal jurisdiction would not deprive the Court of authority to transfer this case to the District Court in Baltimore. *See Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 944 (E.D.Va. 1991); *Datasouth Computer Corp.*, 719 F. Supp. at 450; *accord Goldlawr, Inc.*, 369 U.S. at 466.

Therefore, the Court should deny the RICO defendants' motion to dismiss for improper venue. In the event the Court determines that the District of Columbia is an improper venue in this case, plaintiff respectfully requests the Court to transfer this action to the District Court for the District of Maryland, Baltimore Division, pursuant to the improper venue transfer statute, 28 U.S.C. § 1406(a).

## V.    The RICO Defendants' Motion To Dismiss Should Be Stricken Because It Was Filed Out of Time, Without Leave Of Court, And In Violation Of The Court's January 5, 2006 Order

Plaintiff filed this complaint against the RICO defendants on December 16, 2005. Shortly thereafter, the summons and complaint in this case were served by hand upon the RICO defendants at their place of residence and business on December 17 and December 19, 2005. The RICO defendants' response to the complaint was therefore due on January 6 and January 9, 2006. On January 5, 2006, the RICO defendants filed a motion for an extension of time to respond to the complaint, seeking until January 16, 2006 to file a responsive pleading. *See* Mot.

for Ext. of Time, at . Plaintiff did not consent to this motion for the reasons explained in plaintiff's response to the RICO defendants' motion for an extension of time.

On January 5, 2006, the Court granted the RICO defendants' motion for an extension of time. In its Order, the Court clearly stated that "defendants shall answer or otherwise respond to the complaint *by not later than January 16, 2006*." January 5, 2006 Order (emphasis added). However, the RICO defendants did not respond to the complaint by January 16, 2006. Instead, they filed a belated motion to dismiss for improper venue on January 17, 2006 in violation of the Court's January 5, 2006 Order and without seeking leave of Court to file a responsive pleading out of time.[5] Plaintiff would not have consented to the late filing.

That January 16, 2006 was a legal holiday is of no consequence because the RICO defendants specifically requested an extension until January 16, 2006 in their motion for an extension of time and the Court's January 5, 2006 Order directed the RICO defendants to file their answer "by not later than January 16, 2006." January 5, 2006 Order. Although Rule 6(a) of the Federal Rules of Civil Procedure exempts legal holidays for computation of "any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute," Rule 6 does not apply to *firm calendar dates* issued by the Court's orders and is only applicable to *numeric computations of time* "prescribed or allowed by these rules, by the local rules of any district court, by order of court." Fed. R. Civ. Proc. 6(a). Consequently, the fact that January 16, 2006 was a legal holiday did not relieve the RICO defendants of their obligation to file their responsive pleading "by not later than January 16, 2006." January 5, 2006 Order. The RICO defendants could have electronically filed their

---

[5] Nor did defendants Mojo Properties, LLC, Mojo Projects, LLC, and Mojo Realty, LLC, file a statement disclosing their corporate affiliations with their initial pleading as required by Local Civil Rule 7.1. The RICO defendants' conduct in this case evinces a callous disregard of the Court's rules.

motion on January 16, 2006 or before, but failed to do so.  This is not a basis for excusable neglect.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike.  It provides that "upon motion made by a party . . . or upon the Court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Proc. 12(f).  The Court should strike the RICO defendants' motion to dismiss for improper venue because the motion was filed out of time without leave of Court and in violation of the Court's January 5, 2006 Order directing the RICO defendants to "answer or otherwise respond to the complaint by not later than January 16, 2006" and because the RICO defendants have no ground for excusable neglect.  *See United States v. Thirty-Five Firearms*, 123 Fed.Appx. 204, 207 (6th Cir. 2005) (striking answer due to late filing in civil forfeiture action and denying motion for extension of time to file a verified claim); *In re Lynch*, 430 F.3d 600, 605 (2d Cir. 2005) ("Where, as here, no excusable neglect was shown, the late filing is not permitted."); *accord Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (affirming denial of motion for leave to amend due to late filing); *Hamilton v. J.C. Penney Co., Inc.*, 127 Fed. Appx. 47, at 49 (3d Cir. 2005) (non-precedential) (granting motion to strike demand for trial de novo due to late filing, and stating that counsel's delay in filing the demand did not constitute excusable neglect); *U.S. ex. rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 856 (10th Cir. 2005) (dismissing appeal due to counsel's failure to comply with the court's order and late filing of notice of change of contact information).

**VI.    The Court Should Grant Plaintiff's Application For Entry Of Default Against The RICO Defendants Because Of Their Inexcusable Delay In Responding To The Complaint, Failure To Raise A Meritorious Defense, And Prejudice To Plaintiff**

Plaintiff respectfully requests the Court to enter the RICO defendants' default because of their inexcusable delay in responding to plaintiff's complaint despite having been granted a motion for an extension of time.  *See* Fed. R. Civ. Proc. 55(a) ("[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."); *Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535 U.S. 743, 757-58 (2002) ("If a defendant fails to respond to a complaint, default judgment may be entered on behalf of the plaintiff. . . .  And a party failing to obey [court] orders . . . is subject to a variety of sanctions, including the entry of default judgment."); *New York v. Green*, 420 F.3d 99, 108-110 (2d Cir. 2005) (entering default judgment against defendants because they failed to timely respond to the complaint in an attempt to delay proceedings).

Entry of default is particularly warranted here because the RICO defendants failed to comply with the Court's January 5, 2006 Order granting their motion for an extension of time, did not seek leave of Court to file their motion to dismiss out of time, and offered no basis for their late filing.  *See Immuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 568- 574 (S.D. Fla. 2001) (violation of the Court's discovery scheduling order was grounds for striking defendant's pleadings and entering a default judgment); *accord Tibbetts v. Sweetland,* 2004 WL 287123 at *1 (D.C. Cir. 2004) (dismissing appeal due to violation of the Court's order concerning the late filing of appellant's opening brief); *Barber v. American Security Bank*, 841 F.2d 1159, 1162 (D.C. Cir. 1998) (dismissing appeal because counsel failed to file a timely brief, failed to file a motion for an extension of time 10 days prior to date brief was due, failed to

timely seek leave to file his enlargement motion late, and offered inadequate grounds for late filing). Indeed, the RICO defendants' conduct in this case evinces a reckless disregard of the impact of delay on Court proceedings when exigent circumstances exist warranting an expedited discovery and litigation schedule.

Plaintiff will be prejudiced if default is not entered against the RICO defendants due to their inexcusable delay in responding to the complaint because (1) plaintiff's poor psychological condition is deteriorating and any delay of this action may preclude him from meaningfully participating in trial (*See* affidavit of Marvin Osman, M.D.), (2) defendant Vedadi is 84 years old and may not be available for a deposition and to testify in Court if trial is not scheduled on an expedited basis, and (3) plaintiff seeks expedited discovery on the financial sources for the purchase of the properties at issue in this case in order to prepare its forthcoming motion for injunctive and equitable relief.[6] *See Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844-45 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"); *Cabana v. Forcier*, 200 F.R.D. 9, 14 (D.Mass. 2001) (illness of a witness is grounds for issuance of an expedited discovery schedule); *Thyssen Steel Co. v. United States*, 712 F. Supp. 202, 203 (Ct. Int'l Trade 1989) (imposition of an expedited litigation schedule was appropriate "[d]ue to the potential hardship to plaintiff").

Nor have the RICO defendants raised a meritorious defense warranting the Court's decision not to enter default against them despite their violation of the Court's January 5, 2006 Order. They have neither filed an answer denying the allegations in the complaint nor filed a

---

[6] Plaintiff is currently compiling evidence, including translation of Persian documents, identification of witnesses who have left the Washington, DC area, and preparation of affidavits from fact and expert witnesses, to substantiate its forthcoming motions for a preliminary injunction and for an expedited discovery and litigation schedule.

motion to dismiss for failure to state a claim or for lack of jurisdiction. They have not presented any evidence to deny the allegations made against them in the complaint. Instead, the RICO defendants have filed an untimely procedural motion to dismiss for improper venue with the ultimate goal of further delaying resolution of this case. Under these circumstances, the Court should enter default against the RICO defendants and provide plaintiff an opportunity to present evidence to the Court to prove his case. *See Green*, 420 F.3d at 108-110; *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926-29 (9th Cir. 2004) (affirming entry of default judgment against defendant due to its inexcusable delay in responding to the complaint, failure to raise a meritorious defense, and prejudice to plaintiff); *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167-179 (2d Cir. 2004) (affirming entry of default judgment against defendant).

Upon entry of default, plaintiff is prepared to submit to the Court documentary evidence, including admissions by party opponents, and affidavits from fact and expert witnesses to prove the claims asserted against the RICO defendants in plaintiff's complaint and to obtain a judgment by default against the RICO defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

## <u>CONCLUSION</u>

For the above reasons, plaintiff respectfully requests the Court to deny the RICO defendants' motion to dismiss for improper venue.  Plaintiff further respectfully requests the Court to strike the RICO defendants' motion to dismiss and grant plaintiff's application for entry of default against the RICO defendants.  Should the Court determine that the District of Columbia is not the proper venue in this case, plaintiff respectfully requests the Court to transfer this action to the District Court for the District of Maryland, Baltimore Division, pursuant to the venue transfer provision set forth in 28 U.S.C. § 1406(a).

Respectfully submitted,

/s/ Stefan Shaibani

OF COUNSEL:                                    Stefan Shaibani (Bar No. 490024)
Koorosh Dehghan, Esq.                          LITIGATION ASSOCIATE, PLLC
Dehghan Business & Legal Consulting            1150 Connecticut Avenue, N.W.
18534 Cherry Laurel Lane                       Suite 900
Gaithersburg, Maryland 20879                   Washington, DC 20036
                                               Tel:  (202) 862-4335
                                               Fax: (202) 828-4130

Dated: January 30, 2006                        *Attorney for plaintiff Bijan Modaressi*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2006, I electronically filed and caused to be served by

First Class Mail copies of "PLAINTIFF'S OPPOSITION TO THE RICO DEFENDANTS'

MOTION TO DISMISS FOR IMPROPER VENUE, AND PLAINTIFF'S MOTION TO

STRIKE THE RICO DEFENDANTS' MOTION TO DISMISS AND APPLICATION FOR

ENTRY OF DEFAULT AGAINST THE RICO DEFENDANTS" addressed as follows:

> Todd Forster
> Futrovsky, Nitkin & Scherr, Chartered
> 77 S. Washington Street
> First Floor
> Rockville, Maryland 20850
> Tel: 301-251-8500
>
> Danielle M. Espinet
> Rolinsky, Ternzio & Saurez LLP
> 14915 River Road
> Potomac, Maryland 20854
> Tel: 240-632-0903
>
> Matthew McClain
> Pillsbury Winthrop Shaw Pittman LLP
> 2300 N Street, NW
> Washington, DC 20037
> Tel: 202-663-8183
>
> <u>/s/ Stefan Shaibani</u>