## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BIJAN MODARESSI,

     Plaintiff,

       v.

MOLOOK VEDADI, ET AL.,

     Defendants.

Civil Action No.  05-2424 (JDB)

## <u>MEMORANDUM OPINION</u>

    Plaintiff Bijan Modaressi brings this civil action against his mother and brother (as well as three companies that his brother controls) on the theory that they engaged in a two-decades-long criminal enterprise to pilfer money from a restaurant that plaintiff owned in the Georgetown section of Washington, D.C.  Defendants, who are Maryland citizens, have moved to dismiss the complaint for improper venue, asserting that the specific venue provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965, as well as the requirements of the general federal venue statute, 28 U.S.C. § 1391, make the District of Maryland the only appropriate forum for this suit.  Because the Court concludes that RICO's venue provisions need not be satisfied if venue is properly established pursuant to section 1391, and that enough of the relevant events in this case occurred in the District of Columbia to support venue under section 1391, it will deny defendants' motion to dismiss.  In short, plaintiff cannot choose his relatives, but he may choose where to sue them -- and the Court must respect that choice when, as here, it is consistent with the statutory limitations on venue.

-1-

# BACKGROUND

From 1982 to 2000, plaintiff owned Chelsea's, a restaurant and nightclub in the District of Columbia. Compl. ¶ 18. From 1986 to 1988, defendant Morteza Modaressi, plaintiff's brother, worked as the head bartender at Chelsea's. Id. at ¶ 19. During those two years, the complaint alleges, Morteza Modaressi (who then was living in the District of Columbia, id. at ¶ 7) "defraud[ed] plaintiff of revenues generated from the sale of liquor at Chelsea's by offering 'free' drinks to [patrons] in exchange for large tips (in the range of $50 per person)," totaling thousands of dollars. Id. at ¶ 19. According to the allegations of the complaint, plaintiff's mother, defendant Molook Vedadi, also stole from the restaurant -- embezzling more than $225,000 over a period of three years (from 1997 to 2000) from the cash receipts that Chelsea's employees delivered in envelopes to plaintiff's Maryland home, where his mother lived. Id. at ¶¶ 22, 25-26. Plaintiff alleges that his mother, whom he had appointed "as his trustee for the purpose of collecting and depositing in trust profits generated from Chelsea's for plaintiff's benefit," id. at ¶ 23, transferred "tens of thousands of dollars" of the stolen funds to a bank in Iran using a D.C.-based money carrier between 1997 and 2003, id. at ¶¶ 29-30. The complaint asserts that plaintiff's brother facilitated the embezzlement by putting their mother in contact with the money carrier, bringing her to the money carrier, making telephone calls and sending faxes to aid the transfer, and preparing false tax returns to disguise the theft. Id. at ¶ 32. Defendants used the remainder of the embezzled funds, plaintiff contends, to purchase three rental properties as well as a townhouse and a hair salon -- all in the Maryland suburbs of Washington, D.C. See id. at ¶¶ 38-40, 43-44. As a result of defendants' alleged embezzlement, plaintiff contends that he was unable to pay sales taxes owed to the District of Columbia and was forced to close Chelsea's in 2000. See id. at ¶ 52.

On December 16, 2005, plaintiff filed this civil action against defendants seeking treble damages for various violations of RICO as well as compensatory and punitive damages for conversion, fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, fraudulent conveyance and/or transfer of real property, constructive trust, interference with contractual relations, and intentional infliction of emotional distress.  Defendants responded with a motion to dismiss for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Venue statutes serve "the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1576 (Fed. Cir. 1990).  Rule 12(b)(3) permits a defendant at the outset of litigation to test whether plaintiff has brought the case in a venue that the law deems appropriate.  Fed. R. Civ. P. 12(b)(3).  If the plaintiff's chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient.  See 28 U.S.C. § 1406 (providing for dismissal or transfer of a case where there is a venue defect); 28 U.S.C. § 1404 (providing for change of venue "[f]or the convenience of parties and witnesses, in the interest of justice").  "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); 15 Charles Alan Wright et al., Federal Practice & Procedure § 3826, at 258 (2d ed. 1986 & Supp. 2006) ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue.").  Furthermore,

plaintiff must establish venue for each cause of action when a defendant objects. <u>City of New York v. Cyco.net, Inc.</u>, 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005). Unless there are pertinent factual disputes to resolve,[1] a challenge to venue presents a pure question of law for the Court.

## ANALYSIS

Defendants' venue challenge proceeds on two fronts.[2] First, because the general federal venue statute applies "except as otherwise provided by law," 28 U.S.C. § 1391(b), defendants argue that plaintiff must satisfy the specific venue provision of RICO and that the facts alleged in the complaint fail to do so. Second, defendants assert that plaintiff also must satisfy the general federal venue statute, section 1391, with respect to all claims and that he has not done so. The Court will address each argument in turn.

---

[1] <u>See</u> Wright et al., <u>supra</u>, § 3826, at 259 ("The court, rather than a jury, decides contested fact issues relating to the venue question.").

[2] Plaintiff has filed a "motion to strike" defendants' motion to dismiss because, plaintiff contends, it was filed out of time. On January 5, 2006, the Court granted defendants' motion for an extension of time to answer or otherwise respond to the complaint and, in doing so, specified that defendants' responses to the complaint were due "by not later than January 16, 2006" -- the date proposed by defendants in their motion. As it happened, January 16 was a federal holiday (the Birthday of Martin Luther King, Jr.). Defendants filed their motion on the next business day, January 17. The motion therefore was timely filed pursuant to Rule 6 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that "[i]n computing any period of time prescribed ... by order of court ... [t]he last day of the period so computed shall be included, unless it is ... a legal holiday, ... in which event the period runs until the end of the next [regular business day]." Fed. R. Civ. P. 6(a). The Court rejects as frivolous plaintiff's unsupported contention that "Rule 6 does not apply to *firm calendar dates* issued by the Court's orders and is only applicable to *numeric computations of time*." <u>See</u> Pl.'s Opp'n to Mot. to Dismiss at 24 (emphasis in original). Moreover, the Court observes that plaintiff's motion to strike is improper under the plain language of Rule 12(f), which states that a Court, on its own initiative or on a party's timely motion, may "order stricken from *any pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis supplied). A motion to dismiss is not a pleading. <u>See</u> Fed. R. Civ. P. 7(a). Accordingly, the Court will deny plaintiff's motion to strike, as well as plaintiff's accompanying motion for entry of default, which is based on the same allegation of untimely filing.

## I.    RICO Venue

RICO contains a special venue provision that permits any civil action brought thereunder to "be instituted in the district court of the United States for any district in which [a defendant] *resides, is found, has an agent, or transacts his affairs*."  18 U.S.C. § 1965(a) (emphasis supplied).  In this case, the allegations of the complaint (which are the only facts properly before the Court) do not support a finding that any defendant resides, is found, has an agent, or transacts affairs in the District of Columbia.[3]  Thus, if plaintiff were required to satisfy section 1965(a) in order to overcome defendant's venue objection, the case could not proceed in this Court and instead would have to proceed in the District of Maryland, where all the defendants reside and/or transact business.  Section 1965, however, is not a venue *requirement*; rather, it is a substitute venue provision that a plaintiff may utilize if venue is not otherwise available.  See Cyco.Net, Inc., 383 F. Supp. 2d at 543-44 ("The RICO venue provision is supplemental to the general federal venue provision found in 28 U.S.C. § 1391.  This means Plaintiff may properly lay venue in accordance with either 18 U.S.C. § 1965 or 28 U.S.C. § 1391.") (internal citations omitted); Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship, 817 F. Supp. 899, 904 (D. Kan. 1993) ("The venue provisions of RICO supplement the provisions of § 1391(b)"); Van Schaick v. Church of Scientology of Calif., Inc., 535 F. Supp. 1125, 1133 n.6 (D. Mass. 1982) ("The special venue provision found in 18 U.S.C. § 1965 ... is intended to liberalize the existing venue provisions.").

In other words, section 1965 is not the exclusive source of venue for a RICO claim.  A

---

[3] Courts have interpreted "transacts his affairs" to mean the same thing as the phrase "transacts business" in the venue provision of the federal antitrust statute.  Mylan Labs., Inc. v. Akzo, N.V., 1990 WL 58466, at *6 (D.D.C. Mar. 27, 1990).

RICO plaintiff, if he chooses, still may rely on the general venue provisions of 28 U.S.C. § 1391

to establish venue. See Van Schaick, 535 F. Supp. at 1133 n.6 ("[W]here venue is improper under

[section] 1965(a), it is appropriate to inquire whether the action can be maintained under the

general venue statute, 28 U.S.C. § 1391(b)."). Because it appears in this case that venue would

not be proper in this district under section 1965(a), the Court will consider whether plaintiff

nonetheless has satisfied the requirements of the general federal venue statute.[4]

### II.    General Federal Venue

The general requirements for venue in federal court are provided by 28 U.S.C. § 1391.

When, as here, subject-matter jurisdiction is not premised solely on diversity of citizenship,[5]

section 1391(b) specifies the following three places where venue would be proper:

> (1) a judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of the property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant may be found, if there is
> no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); Crenshaw v. Antokol, 287 F. Supp. 2d 37, 41 (D.D.C. 2003). If all

defendants reside in the same state, as they do in this case, section 1391(b) gives plaintiff a choice:

he may bring suit either in any district where a defendant resides or in any district where a

---

[4] Even if this district were the proper venue for the RICO claims under section 1965(a), the
Court nevertheless would have to consider whether the District of Columbia would be the
appropriate venue for adjudication of plaintiff's common-law claims under section 1391 or,
alternatively, whether the doctrine of pendent venue applied to those claims.

[5] Subject-matter jurisdiction over plaintiff's RICO claims is founded on 28 U.S.C. § 1331
(federal-question jurisdiction). See Compl. ¶ 5. There also is diversity of citizenship between
plaintiff and defendants -- plaintiff contends that he is a citizen of California and that all identified
defendants are Maryland citizens -- and a sufficient amount in controversy to support subject-
matter jurisdiction under 28 U.S.C. § 1332(a)(1). See id. at ¶¶ 5, 8-13.

substantial portion of the underlying events happened (provided, of course, that there is personal jurisdiction over the defendants in that district).  See Hall v. South Orange, 89 F. Supp. 2d 488, 493 (S.D.N.Y. 2000) ("The statute clearly offers two possibilities for an appropriate venue."); Merchants Nat'l Bank v. Safrabank, 776 F. Supp. 538, 541 (D. Kan. 1991) ("[T]he language of the statute ... provides alternative bases of venue."); cf. Market Transition Facility v. Twena, 941 F.Supp. 462, 465 (D.N.J. 1996) (interpreting similar language of 28 U.S.C. § 1391(a) as approving venue "in *either* a district within the state where all defendants reside or in a district where a substantial part of the events or omissions giving rise to the claim occurred") (emphasis supplied).[6]

In this case, because all defendants reside in Maryland, the only possible venues are (1) the District of Maryland, or (2) any district "in which a substantial part of the events or omissions giving rise to the claim occurred."  Hence, to support venue here, plaintiff must establish that a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.  If he cannot do so, the Court must either dismiss the case or transfer it to the District of Maryland -- the only district in which all parties agree that a substantial portion of the events or omissions giving rise to the claim occurred, as well as the only district where all defendants reside.

---

[6] A small minority of courts have read section 1391(b) to mean that the residential venue provision of section 1391(b)(1) takes precedence over the transactional venue provision of section 1391(b)(2).  See Cobra Partners, L.P. v. Liegl, 990 F. Supp. 332, 335 (S.D.N.Y. 1998) ("If, and only if, defendants do not all reside in the same state, then, and only then, venue lies in a district in which a substantial part of events or omissions giving rise to the claim occurred."); see also Canaday v. Koch, 598 F. Supp. 1139, 1148 (E.D.N.Y. 1984).  The Court, however, is persuaded by the language of the statute that *either* residential venue or transactional venue may be invoked when all defendants reside in the same state.  Indeed, the proviso of section 1391(b)(3) that limits its application to situations where "there is no district in which the action may otherwise be brought," strongly suggests that the first two categories, which lack such a limitation, should not be read in a hierarchical fashion.

Defendants do not dispute that *some* of the alleged events in this case occurred in the District of Columbia (if they occurred at all). Those events are as follows:

> [D]uring his employment as a bartender at Chelsea's and while he was residing in the District of Columbia from 1986-1988, defendant Modaressi engaged in a scheme to defraud plaintiff of revenues from the sale of liquor at Chelsea's [in the District of Columbia] ... (Compl. ¶ 19); ... defendant Vedadi telephonically instructed Chelsea's employees to deliver to her from the District of Columbia large cash envelopes containing Chelsea's profits ... (Compl. ¶¶ 25-27); defendant Vedadi transported funds embezzled from Chelsea's to a money carrier in the District of Columbia whence she laundered the funds to bank accounts in Iran (Compl. ¶¶ 30-31); defendant Modaressi assisted defendant Vedadi in laundering the funds embezzled from Chelsea's to bank accounts in Iran by transporting defendant Vedadi and the embezzled funds to the money carrier in the District of Columbia (Compl. ¶¶ 30-32).

Pl.'s Opp'n to Mot. to Dismiss at 8-9. Plaintiff also contends that he sustained injuries in the District of Columbia. Compl. ¶¶ 52-54 (asserting that, as a result of defendants' actions, Chelsea's was shut down and its assets in the District of Columbia were seized to satisfy unpaid D.C. tax obligations). Furthermore, it is clear that these events -- if they occurred -- "gave rise," at least in part, to the claims advanced by plaintiff here. The only issue in dispute is whether the events that occurred in the District of Columbia constitute a *substantial part* of the events that give rise to plaintiff's claims.

Defendants contend that a *more* substantial portion of the relevant events -- and, indeed, the most *significant* events -- occurred in Maryland. See Def.'s Mem. in Supp. of Mot. to Dismiss at 5-6 ("[A]lthough Plaintiff claims that funds were embezzled from Chelsea's, a D.C. corporation, ... he also claims that the situs of the actual conversion of funds was in the State of Maryland and that the allegedly embezzled funds were used to purchase various realty in Maryland."). Defendants no doubt are correct that several key events happened in Maryland (something plaintiff does not dispute), and defendants may even be right that this suit has a closer

transactional nexus with the District of Maryland than with the District of Columbia.  That

argument, however, misapprehends the question of law that the Court must answer.  Nothing in

section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial*

portion of the relevant events occurred, nor does it require a plaintiff to establish that every event

that supports an element of a claim occurred in the district where venue is sought.  To the

contrary, a plaintiff need only show that "*a* substantial *part* of the events or omissions giving rise

to the claim occurred" in that district.  28 U.S.C. § 1391(b)(2) (emphasis supplied).  Indeed, the

transactional-venue provision of section 1391(b)(2) clearly allows that, in some cases, a plaintiff

will have a choice among multiple districts where a substantial portion of the underlying events

occurred.  See Cyco.net, 383 F. Supp. 2d at 543 ("Venue may be proper even if a greater part of

the events giving rise to a claim happened in another forum."); Dooley v. United Technologies

Corp., 786 F. Supp. 65, 80 (D.D.C. 1992) ("[I]t appears that [section 1391(b)(2)] is intended to

place venue within the District of Columbia, even where the case also might be brought in another

forum."); Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994) ("[W]e ask

whether the district the plaintiff chose had a substantial connection to the claim, whether or not

other forums had greater contacts.").

Simply put, even if a substantial part of the events in this case took place in Maryland, that

does not preclude plaintiff from filing suit in the District of Columbia if a substantial part of the

events took place here, as well.  The Court concludes that the events that plaintiff alleges to have

occurred in the District of Columbia, if proven, would constitute a substantial part of the events

that give rise to plaintiff's claims, and therefore that this district is a proper venue for all of

plaintiff's claims, pursuant to 28 U.S.C. § 1391(b)(2).[7]

## CONCLUSION

For the foregoing reasons, and upon consideration of the entire record, the Court will deny

defendants' motion to dismiss for improper venue.  A separate order has been issued herewith.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:    July 24, 2006



Copies to:

Stefan Shaibani
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, NW, 9th Floor
Washington, DC  20036
Email: stefan@litigationassociate.com

   *Counsel for plaintiff*

---

[7] The fact that venue is proper in this district does not necessarily require that the case remain here.  Under the law of *forum non conveniens*, the Court may transfer the action to any district in which the plaintiff could have brought the action -- in this case, the District of Maryland -- if the "convenience of parties and witnesses" and the "interest of justice" warrant transfer. 28 U.S.C. § 1404(a).  Even if the Court were to construe defendants' motion as requesting such a transfer as an alternative to dismissal, the Court would not grant such a motion *on these facts* because the balance of public-interest factors and private-interest factors would not overcome the presumption in favor of plaintiff's choice of forum -- particularly in light of the fact that the geographic distance between this Court and those of the District of Maryland is far too small to present anything more than minor practical difficulties for the parties or their witnesses.  But see Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136, 140-43 (D.D.C. 2004) (granting a defense motion to transfer an action from the District of Columbia to the District of Maryland).

Danielle M. Espinet
ROLINSKI & SUAREZ, L.L.P.
14915 River Road
Potomac, MD  20854
Email: despinet@rolinski.com

    *Counsel for defendant Molook Vedadi*

Todd Perry Forster
FUTROVSKY, NITKIN & SCHERR, CHARTERED
77 South Washington Street, First Floor
Rockville, MD  20850
Email: tpforster@fnslaw.com

    *Counsel for defendants Morteza Modaressi;, Mojo Projects, LLC; Mojo Realty, LLC; and
Mojo Properties, LLC*